# EXHIBIT A-1

LEXSEE


Positive
As of: Jan 09, 2008

PATRICE SIENKO, Plaintiff, v. VILLAGE OF WOODRIDGE, STEVEN LIST, GEOFFREY KOROUS, LEN NOTZ, LORRAINE KERN, TAMMIE LINDBLOM, WILLIAM MURPHY, JOHN PERRY, and KATHLEEN RUSH, Defendant.

96 C 1429

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1996 U.S. Dist. LEXIS 9825

July 11, 1996, Decided
July 12, 1996, DOCKETED

**DISPOSITION:** [*1] Woodridge's motion to dismiss the portion of Count I which alleges sexual harassment granted. Defendants' motions to dismiss Counts II and III denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, a former police department employee, filed a three count complaint against defendants, a village, its mayor, and numerous police department employees, alleging sex discrimination in her employment. Defendants filed a motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e) and motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

**OVERVIEW:** The employee's first count alleged in part sexual harassment based on a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq. The remaining counts alleged that defendants deprived the employee of her Fourteenth Amendment right to equal protection pursuant to 42 U.S.C.S. § 1983. The employee alleged specific types of differential treatment she received at the hands of defendants in their official and individual capacities, disparate criticism and supervision, different treatment than males for similar mistakes, discriminatory treatment in the scheduling of her working hours, unequal compensation, and reports of discriminatory treatment to supervisors which were ignored and left uncorrected. The court granted in part and denied in part defendants' motions. First, the court held that the employee's hostile work environment claim failed because it was unsupported by sufficient factual allegations. Second, the court held that the employee's § 1983 claims survived, albeit barely, because the employee's complaint alleged facts that allowed the court and defendants to understand the complaint against them.

**OUTCOME:** The court granted defendants' motion to dismiss the portion of the employee's complaint that alleged sexual harassment. The court denied defendants' motions to dismiss the remaining counts alleging civil rights violations.

**CORE TERMS:** hostile, work environment, sexual harassment, harassment, withstand, sexual harassment, pleading requirements, discriminatory, municipality, supervisor, custom, sex, sex discrimination, discriminatory treatment, actionable, severe, sexual, notice, disparate treatment, setting forth, individual capacities, working environment, hypothetically, supervision, experienced, scheduling, heightened, subjected, disparate, pervasive

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*

Page 1

*Civil Procedure > Dismissals > Involuntary Dismissals > Failures to State Claims*
*Criminal Law & Procedure > Accusatory Instruments > General Overview*
[HN1]Defendants must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted since, in ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. The allegations of a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action.

*Civil Rights Law > Civil Rights Acts > Civil Rights Act of 1964*
*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Burdens of Proof > Severe & Pervasive Standards*
*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Hostile Work Environment*
[HN2]Title VII of the Civil Rights Act of 1964 (Title VII) is violated when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. The question of whether an environment is hostile can only be answered by considering all of the circumstances. The following non-exclusive list circumstances should be considered: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Burdens of Proof > Employee Burdens*
*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Burdens of Proof > Objective & Subjective Standards*
*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Burdens of Proof > Severe & Pervasive Standards*
[HN3]To establish a prima facie case for hostile work environment sexual harassment, the plaintiff must show: (1) that he was a member of a protected class; (2) that he was subjected to unwelcome verbal or physical conduct of a sexual nature; (3) that the harassment was based on sex; (4) that the harassment was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment; and (5) that the employer knew or should have known of the harassment and unreasonably failed to take appropriate corrective action. The fourth element of the prima facie case is evaluated from both an objective and a subjective perspective. Title VII of the Civil Rights Act of 1964 (Title VII) does not make all forms of harassment actionable. The "sexual harassment" that is actionable under Title VII is the exploitation of a powerful position to impose sexual demands or pressures on an unwilling but less powerful person. Actionable sexual harassment fosters a sense of degradation in the victim by attacking their sexuality. In effect, the offender is saying by words or actions that the victim is inferior because of the victim's sex.

*Civil Rights Law > Immunity From Liability > Respondeat Superior Distinguished*
*Governments > Local Governments > Claims By & Against*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Unfair Labor Practices > Interference With Protected Activities*
[HN4]Under 42 U.S.C.S. § 1983, a municipality cannot be liable solely on the basis of respondeat superior; a municipality is liable only where the employee acted pursuant to a municipal policy or custom. Allegations of a pattern or a series of incidents of unconstitutional conduct are sufficient to state an unwritten municipal policy. Moreover, a single act of a sufficiently high-ranking policy-maker is sufficient to establish an entity's policy or custom. An entity may be liable even for informal actions, if they reflect a general policy, custom, or pattern of official conduct which even tacitly, encourages conduct depriving citizens of their constitutionally protected rights. In order to plead a § 1983 action against persons named in their individual capacities, a plaintiff must allege that, as to non-policymaker defendants, she was deprived of a federally protected right by an individual acting under the color of state law. Where she is advancing a claim against policymakers, the question of liability rests upon the particular action or inaction that forms the predicate of a claimed constitutional violation.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Criminal Law & Procedure > Accusatory Instruments > Complaints*
*Governments > Local Governments > Claims By & Against*

[HN5]A complaint raising a civil rights claim against a municipality does not require pleadings more stringent that the usual notice pleading requirements of Fed. R. Civ. P. 8(a). Although claimants are not to be held to a heightened pleading requirement, clearly they are still held to the basic "notice pleading" requirements of the Federal Rules of Civil Procedure. Under the Federal Rules of Civil Procedure, a claimant must set forth "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The complaint must, at the very least, allege facts which allow the court and defendants to understand the complaint against them.

**COUNSEL:** For PATRICE SIENKO, plaintiff: Richard Benson Rogich, Timothy M. Richardson, Spyro J. Demakis, Richard B. Rogich & Associates, Ltd., Chicago, IL.

For VILLAGE OF WOODRIDGE, defendant: Patricia L. Argentati, Norton & Mancini, Wheaton, IL.

For STEVEN LIST, defendant: Patricia L. Argentati, (See above).

For GEOFFREY KOROUS, defendant: Patricia L. Argentati, (See above).

For LEN NOTZ, defendant: Patricia L. Argentati, (See above).

For LORRAINE KERN, defendant: Patricia L. Argentati, (See above).

For TAMMY LINDBLOOM, defendant: Patricia L. Argentati, (See above).

For WILLIAM MURPHY, defendant: Patricia L. Argentati, (See above).

For JOHN PERRY, defendant: Patricia L. Argentati, (See above).

For KATHLEEN RUSH, defendant: Patricia L. Argentati, (See above).

**JUDGES:** Charles P. Kocoras, United States District Judge

**OPINION BY:** Charles P. Kocoras

**OPINION**

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on the defendants' motion for a more definite statement [*2] pursuant to Rule 12(e) and motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the defendants' motions are granted in part and denied in part.

BACKGROUND

The plaintiff, Patrice Sienko ("Sienko"), filed a three count complaint against defendants, Village of Woodridge ("Woodridge"), its Mayor, and numerous employees of the Woodridge Police Department ("WPD") for sex discrimination in her employment. Sienko held a position with the WPD as a communications supervisor from April of 1990 through approximately October 26, 1993 when she constructively resigned her position. She then served as a telecommunications officer with the WPD from November of 1993 until she was constructively discharged on July 28, 1994.

Sienko claims that from April of 1992 to July of 1994 she was regularly subjected to discriminatory treatment relating to her sex. She alleges that during the course of her employment with the WPD, there were no female supervisors or superiors for police officers in the chain of command for the WPD. Sienko also alleges that while she worked as a communications supervisor, she received differential treatment and received [*3] disparate criticism and/or supervision over her work from defendants, Steven List ("List"), the Chief of Police for the WPD, and Geoffrey Korous ("Korous"), the Deputy Chief of Operations. Moreover, she claims that males were treated differently than her for similar mistakes, given preferential treatment in the scheduling of their hours, and received unequal compensation (in comparison with females) for the same or similar work. Sienko claims that she made repeated requests and complaints regarding this conduct to List and Korous, in addition to the Mayor of Woodridge, William Murphy ("Murphy"), and to Woodridge's acting Administrator, John Perry ("Perry"). However, nothing was done to remedy the situation according to the Complaint, the well-pleaded facts of which we must currently accept as true..

During the course of her employment as a telecommunicator, Sienko was supervised by Korous and Len Notz ("Notz"). She alleges that until the time of her constructive discharge on July 28, 1994, she also received disparate criticism and/or supervision from these defendants. She once again alleges that her male counterparts in telecommunications were treated differently than her for similar [*4] mistakes, and that they received preferential treatment in the scheduling of their hours. She claims that while she held this position, she experienced further harassment and discriminatory treatment from defendants, List, and his close acquaintances, Tammy

Lindbloom ("Lindbloom") and Lorraine Kern ("Kern"). In addition, she claims that she reported this behavior to Murphy and Perry, as well as to Kathleen Rush ("Rush"), the Assistant Administrator or Personnel Director for the Village of Woodridge, but that they, as well as Sienko's supervisors in the WPD, were deliberately indifferent to her discriminatory treatment and failed to take remedial action.

Sienko alleges that the discrimination and harassment she experienced were sufficiently severe and persistent over a period of time to seriously affect her mental well-being, resulting first in her constructive resignation, and then her subsequent constructive discharge from the defendant's employment. On May 3, 1995, she filed a charge of discrimination in the workplace against the defendants with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights.

After receiving her right to sue letter [*5] from the EEOC, Sienko filed this suit in federal court. In Count I, the plaintiff alleges that Woodridge's actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., in that she received disparate treatment in the terms and conditions of her employment, and that she experienced sexual harassment based upon a hostile work environment. In Counts II and III respectively, the plaintiff alleges that the defendants Woodridge, and the Mayor and various police employees individually, deprived her of her Fourteenth Amendment right to equal protection pursuant to 42 U.S.C. § 1983. Defendant Woodridge now moves for a more definite statement with respect to Count I, or in the alternative to dismiss the portion of Count I which alleges a sexually hostile work environment. Additionally, the defendants seek the entire dismissal of Counts II and III.

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. [HN1]Defendants must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted since, in ruling [*6] on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. Ed Miniat, Inc. v. Globe Life Ins. Group Inc., 805 F.2d 732, 733 (7th Cir. 1986), cert. denied, 482 U.S. 915, 96 L. Ed. 2d 676, 107 S. Ct. 3188 (1987). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). See also Hishon v. King & Spalding, 467 U.S. 69, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984); Doe on Behalf of Doe v. St. Joseph's Hospital, 788 F.2d 411 (7th Cir. 1986). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. Gray v. County of Dane, 854 F.2d 179, 182 (7th Cir. 1988). We turn to the motion before us with these principles in mind.

**DISCUSSION**

**COUNT I**

In Count I of the Complaint, the [*7] plaintiff alleges that Woodridge, through its agents, violated Title VII of the Civil Rights Act of 1964. Title VII makes it compensation, terms, conditions, or privileges of employment because of such individual's...sex..." 42 U.S.C. § 2000e-2(a)(1). Title VII is designed to protect workers from sex discrimination which may manifest itself in disparate treatment in the terms and conditions of one's employment because of one's gender or in sexual harassment that produces a discriminatorily hostile work environment. Harris v. Forklift Sys., 126 L. Ed. 2d 295, 114 S. Ct. 367, 370 (U.S. 1993).

In Count I of her Complaint, Sienko alleges both of these grounds for recovery against Woodridge. The defendant, Woodridge, has filed a motion for a more definite statement, arguing that Rule 8(e)(2) of the Federal Rules of Civil Procedure allows a plaintiff to set forth two or more claims within the same count only if the counts are set forth alternatively or hypothetically. Alternatively, the defendant seeks to dismiss the portion of the complaint which alleges sexual harassment. Because the parties have briefed the issue of the duality of Count I, we will treat the issue even though our [*8] holding as to the insufficiency of the sexual harassment claims renders the discussion an academic exercise.

Woodridge contends that because the plaintiff has stated her claims for disparate treatment and sexual harassment conjunctively, rather than alternately or hypothetically, she has set forth a confusing, ambiguous pleading which thereby prevents the defendant from framing its response. We are not convinced by this argument. While it is true that Rule 8(e)(2) affords the option to plead alternatively argument. While it is true that Rule 8(e)(2) affords the option to plead alternatively of hypothetically, nowhere in the text of this rule is there a prohibition against multiple statements of a claim being plead conjunctively in the same count. Moreover, Woodridge has failed to cite any authority in support of this contention. Further, the complaint is not "so vague or ambiguous" that it fails sufficiently to notify the defendant of the sex discrimination claims against it, or pre-

vents the defendant from framing a response. Because we find that Count I adequately conforms with Rule 8(e), there is no need for the plaintiff to file an amended complaint setting forth the two theories [*9] in separate sections.

However, Woodridge also requests that we dismiss the portion of Count I which alleges a sexually hostile work environment. The defendant claims that the facts alleged in the complaint are not sufficient to set forth a cause of action for sexual harassment. We agree. The United States Supreme Court considered the definition of hostile work environment in Harris, 126 L. Ed. 2d 295, 114 S. Ct. 367. In Harris, the Court reiterated that [HN2]Title VII was violated "when the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" 114 S. Ct. at 370 (quoting Meritor Savings Bank FSB v. Vinson, 477 U.S. 57, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986)). The Court characterized this standard as a "middle path" between requiring a plaintiff to prove psychological injury and making actionable conduct that is merely offensive but does not pervade the working environment. Id. The Court stated that the question of whether an environment is hostile can only be answered by considering all of the circumstances. [*10] Id. at 371. The Court set forth the following non-exclusive list circumstances to be considered: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id.

[HN3]To establish a prima facie case for hostile work environment sexual harassment, the plaintiff must show: (1) that he was a member of a protected class; (2) that he was subjected to unwelcome verbal or physical conduct of a sexual nature; (3) that the harassment was based on sex; (4) that the harassment was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment; and (5) that the employer knew or should have known of the harassment and unreasonably failed to take appropriate corrective action. Swanson v. Elmhurst Chrysler Plymouth, Inc., 882 F.2d 1235, 1238 (7th Cir. 1989) (setting forth the first four elements), cert. denied, 493 U.S. 1036, 107 L. Ed. 2d 774, 110 S. Ct. 758 (1990); Guess v. Bethlehem Steel Corp., 913 F.2d 463, 465 (7th Cir. 1990) (providing this formulation of the fifth element). The fourth element [*11] of the prima facie case is evaluated from both an objective and a subjective perspective. Rennie v. Dalton, 3 F.3d 1100, 1107 (7th Cir. 1993). Title VII does not make all forms of harassment actionable:

> The "sexual harassment" that is actionable under Title VII is "the exploitation of a powerful position to impose sexual demands or pressures on an unwilling but less powerful person." Actionable sexual harassment fosters a sense of degradation in the victim by attacking their sexuality. In effect, the offender is saying by words or actions that the victim is inferior because of the victim's sex.

Goluszek v. Smith, 697 F. Supp. 1452, 1456 (N.D. Ill. 1988)(quoting Note, Sexual Harassment Claims of Abusive Work Environment Under Title VII, 97 Harv. L. Rev. 1449, 1451-55 (1984)).

In the instant case, Sienko's hostile work environment claim cannot stand because it is unsupported by sufficient factual allegations. Aside from the general allegation that she was subjected to "unwelcome conduct of a sexual and gender based nature," she has provided no other factual allegations in support of her claim of harassment. Nowhere in the Complaint does she allege any specific [*12] incidents in which sexual demands, pressures or innuendo were imposed upon her. Further, at no time does she allege that she was physically or verbally threatened or humiliated on the basis of her sex. Moreover, Sienko does not adequately allege that her treatment was so sufficiently severe or pervasive as to create an objectively abusive working environment as it was defined by the Supreme Court in Harris. She has not alleged any instances wherein she was discriminatorily intimidated, ridiculed or insulted. 114 S. Ct. at 370. Having set forth no facts under which her claim for hostile work environment sexual harassment can be sustained, this portion of Count I must be dismissed.

## COUNTS II AND III

The plaintiff has brought Counts II and III pursuant to 42 U.S.C. § 1983. In Count II, the plaintiff alleges that the Village of Woodridge is liable, through its agents and policymakers, for maintaining a custom of sex discrimination with respect to the employment of women in the WPD, which resulted in purposeful discrimination against her because of her gender and a violation of her Fourteenth Amendment right to equal protection under the law. In Count III, the plaintiff seeks [*13] to hold the various defendants employed by Woodridge liable in their individual capacities.

[HN4]Under § 1983, a municipality cannot be liable solely on the basis of respondeat superior; a municipality is liable only where the employee acted pursuant to a municipal policy or custom. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690-91, 56 L. Ed.

2d 611, 98 S. Ct. 2018 (1978). Courts have found allegations of a pattern or a series of incidents of unconstitutional conduct to be sufficient to state an unwritten municipal policy. Powe v. City of Chicago, 664 F.2d 639, 650 (7th Cir. 1981). Moreover, a single act of a sufficiently high-ranking policy-maker is sufficient to establish an entity's policy or custom. Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986); Malak v. Associated Physicians, Inc., 784 F.2d 277, 283-4 (7th Cir. 1986). An entity may be liable even for "informal actions, if they reflect a general policy, custom, or pattern of official conduct which even tacitly, encourages conduct depriving citizens of their constitutionally protected rights." Wolf-Lillie v. Sonquist, 699 F.2d 864, 870 (7th Cir. [*14] 1983).

In order to plead a § 1983 action against persons named in their individual capacities, a plaintiff must allege that, as to non-policymaker defendants, she was deprived of a federally protected right by an individual acting under the color of state law. Alvarado v. City of Chicago, et al., 648 F. Supp. 994, 996 (N.D. Ill. 1986). Where she is advancing a claim against policymakers, the question of liability rests upon the particular action or inaction that forms the predicate of a claimed constitutional violation.

The defendants have moved to dismiss both counts, arguing that the plaintiff has failed to substantiate her claims with sufficient factual support. Essentially, the defendants assert that the plaintiff's § 1983 claims must be dismissed because she has not alleged a "specific pattern of series of incidents" evidencing either a discriminatory policy or custom, or a discriminatory intent on the part of the municipality or the individual defendants. After examining the complaint thoroughly, as well as the controlling case law, we believe that the complaint is sufficient to withstand this motion to dismiss, although barely so.

In recent years, the U.S. Supreme Court [*15] has addressed the pleading requirements for plaintiffs suing municipalities for civil rights violations. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 113 S. Ct. 1160, 1163, 122 L. Ed. 2d 517 (1993). The Court, in Leatherman, held that [HN5]a complaint raising a civil rights claim against a municipality does not require pleadings more stringent that the usual notice pleading requirements of Federal Rule of Civil Procedure 8(a). 113 S. Ct. at 1163. Although Leatherman holds that claimants are not to be held to a heightened pleading requirement, clearly they are still held to the basic federal rules' "notice pleading" requirements. Under the federal rules, a claimant must set forth "'a short and plain statement of the claim' that will give the defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47.

District Courts in the Seventh Circuit have been divided as to whether or not mere conclusory allegations are sufficient to withstand a motion to dismiss alleging violations of § 1983. See Silk v. City of Chicago, 1996 U.S. Dist. LEXIS 8334, 1996 WL 312074, 23 (N.D. Ill. 1996). Actually, the Seventh Circuit [*16] itself has vacillated as to whether any facts at all must be plead in a complaint alleging a violation of § 1983 in order to withstand a motion to dismiss. For instance, in McTigue v. City of Chicago, 60 F.3d 381 (7th Cir. 1995) the Seventh Circuit affirmed the dismissal of a complaint because it "failed to include a factual basis to describe with particularity the bias that the plaintiff alleges." McTigue, 60 F.3d at 382. However, in Jackson v. Marion County, 66 F.3d 151, 153 (7th Cir. 1995), the Seventh Circuit again rejected a heightened pleading requirement and held that conclusory allegations were sufficient to withstand a motion to dismiss. The Court definitively stated:

> But apart from the rule itself and a handful of tiny arguably appropriate judicial supplements to it, a plaintiff in a suit in federal court need not plead facts; he can plead conclusions. See Fed. R. Civ. P. 8(a)(2). We have made this point many times in our own cases. We know it applies to this case, because that is the holding of Leatherman.

Id. at 153. Nevertheless, in Doherty v. City of Chicago, 75 F.3d 318 (7th Cir. 1996), the Seventh Circuit stated that although there is [*17] no heightened pleading standard for § 1983 cases, there still must be sufficient facts plead to allow the court and the defendants to understand the gravamen of the complaint. Id. at 326. Our view of the appropriate standard is closest to that expressed in Doherty; the complaint must, at the very least, allege facts which allow the court and defendants to understand the complaint against them.

With these principles in mind, we turn to the § 1983 claims advanced by the plaintiff in this case. In support of Counts II and III, Sienko has alleged the specific types of differential treatment she has received at the hands of the various defendants in their official and individual capacities: disparate criticism and supervision; different treatment than males for similar mistakes; discriminatory treatment in the scheduling of her working hours; unequal compensation; and reports of discriminatory treatment to supervisors which were ignored and left uncorrected. Because we believe that these claims sufficiently sets forth facts and allegations to put the defendants on

notice of the claims against them, as well as to understand the gravamen of the complaint, Counts II and III are [*18] sufficient to withstand this motion to dismiss. Thus, the defendants' motions to dismiss Counts II and III are denied.

**CONCLUSION**

For all of the above reasons, Woodridge's motion to dismiss the portion of Count I which alleges sexual harassment is granted. The defendants' motions to dismiss Counts II and III are denied.

Charles P. Kocoras

United States District Judge

Dated: July 11, 1996

LEXSEE


Positive
As of: Jan 09, 2008

**WILLIAM HARRIS and JAMAL HARRIS, on behalf of themselves and other similarly situated, Plaintiffs, -against- INITIAL SECURITY, INC., Defendant.**

05 Civ. 3873 (GBD)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

2007 U.S. Dist. LEXIS 18397; 100 Fair Empl. Prac. Cas. (BNA) 1139

March 7, 2007, Decided
March 7, 2007, Filed

**CORE TERMS:** termination, promotion, class certification, class member, guard, commonality, class action, hiring, security guards, injunctive relief, proposed class, citations omitted, dark-skinned, discipline, overtime, questions of law, discriminatory practices, predominate, statistical, typicality, terminated, fired, individual members, individual's claim, declaratory relief, monetary, hired, similarly situated, discriminatory, compensatory

**COUNSEL:** [*1] For William Harris on behalf of himself and others similarlly situated, Jamal Harris on behalf of himself and others similarly situated, Plaintiffs: Steven Ian Locke, LEAD ATTORNEY, Jeffrey I. Schulman, Carabba Locke LLP, New York, NY.

For Initial Security, Inc., Defendant: Jane B. Jacobs, LEAD ATTORNEY, Joshua D. Rose, Klein, Zelman, Rothermel & Dichter LLP, New York, NY.

**JUDGES:** GEORGE B. DANIELS, United States District Judge.

**OPINION BY:** GEORGE B. DANIELS

**OPINION**

MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, District Judge:

Plaintiffs William Harris and Jamal Harris (no relation) ("Plaintiffs") initiated this action, on behalf of themselves and others similarly situated, against their former employer, defendant Initial Security, Inc., for race and color discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Plaintiffs now move for class certification pursuant to Fed. R. Civ. P. 23. The motion for class certification is denied.

**BACKGROUND**

Defendant provides security services for various clients at sites throughout New York City, including, since July 1, 2000, the Metropolitan Transit [*2] Authority ("MTA") in its headquarters at 2 Broadway in New York City. Compl. P 3; Affidavit of Robert Rahle ("Rahle Aff.") P 6. Defendant hired an Administrative Manager, who is Hispanic, at 2 Broadway in August 2000. Affidavit of Xavier Ruiz ("Ruiz Aff.") P 3. The Administrative Manager had authority to make decisions regarding hiring, promotion, discipline, and termination. Id. at P 4. In June 2001, that individual was promoted to Site Manager, the highest ranking position at 2 Broadway. Id. at P 5.

Plaintiff William Harris was hired as Assistant Site Commander at 2 Broadway in June 2000. Compl. P 6. When the new Administrative Manager arrived in August 2000, he was one-level above Harris in the chain-of-command. Ruiz Aff. P 3. On January 17, 2001, William Harris was fired by the Administrative Manager. According to Harris, he was fired because several guards told the Administrative Manager that, at a pre-shift meeting, William Harris said that the MTA was displeased with Defendant's work, and that a petition should be circulated

Page 1

Case 1:07-cv-06996    Document 11-2    Filed 01/14/2008    Page 11 of 17

2007 U.S. Dist. LEXIS 18397, *; 100 Fair Empl. Prac. Cas. (BNA) 1139

to get another guard fired. Compl. P 25; Affidavit of William Harris ("W. Harris Aff.") P 13 (attached to Affirmation of Steven I. Locke ("Locke [*3] Aff.") Ex. G).

Plaintiff Jamal Harris was hired by the Administrative Manager as a Shift Supervisor in December 2000. Affidavit of Jamal Harris ("J. Harris Aff.") (Locke Aff. Ex. H) P 1; Compl. PP 9-10. The Administrative Manager fired Jamal Harris in February 2001, allegedly because Harris signed out of the logbook at 10:00 p.m., yet was seen leaving 2 Broadway at around 7:00 p.m. J. Harris Aff. P 14; Ruiz Aff. P 10; Compl. P 29.

After their terminations, Plaintiffs filed administrative charges with the Equal Employment Opportunity Commission ("EEOC")--Jamal Harris on June 14, 2001, and William Harris on July 10, 2001. Compl. P 13; Ruiz Aff. Ex. 1 and Ex. 2. The Administrative Manager sent written responses to the EEOC essentially denying all the allegations made by Plaintiffs. Ruiz Aff. Ex. 3 and Ex. 4. The EEOC issued its Determination on June 28, 2004, finding that "reasonable cause exists to believe that, from on or about September 2000 to present, [Defendant] subjected [Plaintiffs] and a class of similarly-situated individuals to a pattern or practice of discrimination based on their race (Black), and/or color (dark-skinned) and to retaliation." EEOC Determination (Locke [*4] Aff. Ex. C); Compl. P 13. After attempts at reconciliation were unsuccessful, the EEOC issued right-to-sue letters on January 27, 2005. Compl. P 13.

Plaintiffs filed the instant action on April 15, 2005, on behalf of themselves and others similarly situated, alleging that Defendant, through the Administrative Manager, implemented and maintained a policy of discrimination towards black and dark-skinned employees in promotions, terminations, overtime, and discipline, creating a hostile work environment and resulting in retaliatory terminations, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Id. PP 35-38. Plaintiffs seek declaratory and injunctive relief, as well as a judgment in the amount of $ 10,000,000.00 on each claim, plus costs, interest, and attorneys' fees.

## ALLEGATIONS OF CLASS-WIDE DISCRIMINATION

Plaintiffs now move to certify a class consisting of "all black and dark-skinned employees of Defendant, employed by that company at 2 Broadway in Manhattan for the period from September 2000 to June 28, 2004 who were either terminated, passed over for promotion, subject to discipline, harassed [*5] and/or retaliated against on the basis of their race or color, i.e., the fact that they were dark-skinned." Plaintiffs' Memo of Law ("Pl. Memo") at 10-11. During the proposed class period, approximately 1,049 security guards worked for Defendant at 2 Broadway, 55% of whom--which is approximately 577 employees--were black. Expert Report of Allen Mazur ("Mazur Report") (Locke Aff. Ex. B) at 2.

Plaintiffs themselves claim that they were terminated as a result of Defendant's discriminatory practices. Pl. Memo at 2, 8; J. Harris Aff. PP 13-14; W. Harris Aff. PP 13-14. They also claim to "know" twenty-five other black security guards "who were terminated because of [Defendant's], and more specifically [the Administrative Managers's] policy of discriminating against non-Hispanics." [1] J. Harris Aff. P 15; W. Harris Aff. P 16. One of those guards submitted his own affidavit in support of class certification claiming that his termination was racially motivated. Affidavit of Robert Allen ("Allen Aff.") P 7. [2] With respect to promotions, Plaintiffs name only one black security guard that allegedly asked for a promotion and was denied, and two black guards who they claim did not receive [*6] promotions despite being more qualified than Hispanic guards who did. J. Harris Aff. P 12; W. Harris Aff. P 12. Plaintiffs also provide the names of four Hispanic guards who they say were unqualified for promotions but were nonetheless promoted ahead of more qualified black guards. J. Harris Aff. PP 6-7, 12; W. Harris Aff. PP 6-7, 12.

[1] Plaintiffs provide no factual basis for how they "know" the reason why each individual they name was fired, and no factual allegations supporting their bald assertion that these individuals were fired because of Defendant's discriminatory policies.

[2] This affidavit was not submitted with Plaintiffs' motion for class certification, but by Order dated December 18, 2006, this Court granted Plaintiffs' motion for an enlargement of time, pursuant to Fed. R. Civ. P 6(b)(2), permitting them to file the affidavit.

Plaintiffs also claim that Hispanic employees were treated much more leniently for violating Defendant's employment policies. Several Hispanic guards, they allege, violated [*7] company policies but were not disciplined, while black employees were disciplined--even terminated--for the same violations as those Hispanic guards who were not. J. Harris Aff. P 10; W. Harris Aff. P 10. For example, they name four black security guards, and one Arab guard, who they claim were either terminated or harassed by the Administrative Manager for minor violations, the same violations that garnered no disciplinary action when committed by Hispanics. As for overtime, Plaintiffs allege that several black security guards--including the three they name in their affidavits-- were forced by a Hispanic supervisor to work overtime,

Case 1:07-cv-06996    Document 11-2    Filed 01/14/2008    Page 12 of 17

2007 U.S. Dist. LEXIS 18397, *; 100 Fair Empl. Prac. Cas. (BNA) 1139

even though they had young children to care for at home, while similarly situated Hispanic guards were not. J. Harris Aff. P 9; W. Harris Aff. P 9. Finally, Plaintiffs allege that the Administrative Manager made several racist remarks towards blacks. Specifically, they claim that the Administrative Manager referred to the black guards as "a bunch of bad apples" that he intended to "weed out," and that he once told a Hispanic guard that "black people are no good." J. Harris Aff. PP 8, 11; W. Harris Aff. PP 8, 11.

In support of their allegations of discrimination, [*8] Plaintiffs submitted a report from their expert, a professor at Syracuse University with a Ph.D. in sociology from Johns Hopkins University. The expert, however, found no evidence of discrimination in terminations:

> [T]here is no indication that it [termination rates] was systematically different for blacks than for Hispanics. The termination rate in 2001 was especially high, with roughly 15% of employees quitting or being fired each month, but the burden fell *equally on both groups.* The reason so many more blacks went out the door in 2001 is that so many more blacks were working, hence so many more were at risk of termination. . . . Of employees whose terminations were explained, 54% quit, 38% were discharged, and 8% left for miscellaneous other reasons. There was *virtually no difference between blacks and Hispanics in the reason for termination.*"

Mazur Report at 7-8 (Lock Aff. Ex. B) (emphasis added). Thus, according to Plaintiffs' own expert, there is "no indication of unequal treatment in terminations" at 2 Broadway. Id. at 11. Moreover, the expert conducted no analysis of, and provided no opinion on, whether there was discrimination in promotions, [*9] discipline, or overtime.

Plaintiffs' expert did find, however, that in 36 of the 46 months following the summer of 2000, the hiring rate of Hispanics at 2 Broadway was greater than the hiring rate of blacks. Id. at 9. Therefore, he concluded, the reason black employment decreased over the four-year period at 2 Broadway was because "[b]lack hiring was insufficient to compensate for black terminations." Id. at 10.

**CLASS CERTIFICATION**

A "Title VII class action, like any other class action, may only be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). Pursuant to Rule 23(a), certification of a class is only appropriate if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Plaintiffs' claim [*10] must also fit within one of the three categories enumerated in Rule 23(b). [3] Fed. R. Civ. P. 23(b); Heerwagen v. Clear Channel Communs., 435 F.3d 219, 225 (2d Cir. 2006). [4]

---

[3] The categories are:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> > (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> >
> > (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to

Case 1:07-cv-06996    Document 11-2    Filed 01/14/2008    Page 13 of 17

2007 U.S. Dist. LEXIS 18397, *; 100 Fair Empl. Prac. Cas. (BNA) 1139

the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b).

[*11]

4  Rule 23 also "contains an implicit requirement that the proposed class be precise, objective and presently ascertainable." Bakalar v. Vavra, 237 F.R.D. 59, 64 (S.D.N.Y. 2006) (citations omitted). A class consisting of "dark-skinned" employees is not ascertainable because there is no objective criteria to which the Court could refer to determine whether someone is sufficiently "dark-skinned" to be a class member. See, e.g, Fogarazzo v. Lehman Bros., 232 F.R.D. 176, 181 (S.D.N.Y. 2005) ("An identifiable class exists if its members can be ascertained by reference to objective criteria."); Hnot v. Willis Group Holdings Ltd., 228 F.R.D. 476, 481 (S.D.N.Y. 2005) ("A class is ascertainable when defined by objective criteria that are administratively feasible, without a subjective determination.").

But while a class consisting of "dark-skinned" employees is not readily identifiable, a class of black employees is. See, e.g., Farber v. City of Paterson, 440 F.3d 131, 137 (3d Cir. 2006) ("Simply put, some groups, particularly those deemed to be distinguishable from others by immutable characteristics, such as African-Americans, women, and the mentally retarded, are so clearly accepted as objectively identifiable that no extended analysis is needed.").

Therefore, even if Plaintiffs could satisfy Rules 23(a) and (b), their proposed class would be limited to black employees only.

[*12] The "rigorous analysis" that district courts must undertake includes the obligation to make determinations as to whether each of the Rule 23 requirements have been met. See Miles v. Merrill Lynch & Co., Inc. (In re Initial Public Offering Sec. Lit.), 471 F.3d 24, 41 (2d Cir. 2006). In making these determinations, the court may make factual findings and resolve factual disputes, even if the determination of a Rule 23 requirement overlaps with an issue that goes to the merits of the plaintiff's claim. Id. Moreover, there must be more than "some showing" that each Rule 23 requirement has been satisfied. [5] Id. at 42. And finally, an expert's testimony cannot establish a Rule 23 requirement "simply by being not fatally flawed." Id.

5  Previously, some courts within this Circuit had applied a "some showing" standard of proof in deciding whether each Rule 23(a) requirement had been met. See In re Initial Public Offering Sec. Lit., 471 F.3d at 35, 35 n.5 (discussing cases that have used the "some showing" standard).

[*13] A. The Rule 23(a) Requirements

1. Numerosity

During the proposed class period, from 2000 to 2004, Defendant employed about 577 black security guards at 2 Broadway. Of those 577 guards, Plaintiffs name only 29 black employees that they say were terminated, passed over for promotion, forced to work overtime, or disproportionately disciplined because of Defendant's alleged discriminatory practices. Defendant, however, does not challenge Plaintiffs' assertion that the proposed class is sufficiently numerous.

2. Commonality and Typicality

Defendant's do, however, argue that Plaintiffs cannot satisfy the commonality and typicality requirements. Commonality is satisfied "if plaintiffs' grievances share a common question of law or of fact." Freeland v. AT & T Corp., 238 F.R.D. 130, 140 (S.D.N.Y. 2006) (citations omitted). Even a single common legal or factual question is sufficient. Id. In discrimination cases, commonality means that the "defendants discriminated against class members in the same general fashion." Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79, 238 F.R.D. 82, 94 (S.D.N.Y. 2006) (citation omitted). Claims [*14] are

Case 1:07-cv-06996   Document 11-2   Filed 01/14/2008   Page 14 of 17

2007 U.S. Dist. LEXIS 18397, *; 100 Fair Empl. Prac. Cas. (BNA) 1139

typical "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Id. (citation omitted). The factual background of each named plaintiff's claim need not be identical to the claims of all class members for typicality to be satisfied. Rather, if the disputed issue of law or fact occupies the same degree of centrality to both the named plaintiffs' and class members' claims, then typicality is met. Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999) (citation omitted). [6]

> 6   Commonality and typicality "tend to merge into one another as both 'serve as guideposts for determining whether the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'" Freeland, 238 F.R.D. at 141 (quoting Caridad, 191 F.3d at 291).

Plaintiffs claim that [*15] Defendant, acting through its Administrative Manager, maintained a practice and policy to discriminate against black employees, and that this policy had a discriminatory effect on black employees in overtime, promotions, discipline, and termination, and in creating a hostile work environment. "But the allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified." Falcon, 457 U.S. at 157. Indeed, there is a "wide gap" between an individual's claim that he is the victim of a discriminatory practice, and "the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims." Id. at 157-58. To bridge that gap, the plaintiff "must prove much more than the validity of his own claim." Id. at 158.

To prove more than the validity of their own claim, Plaintiffs must show that Defendant's alleged discriminatory practice "is causally related to [*16] a pattern of disparate treatment or has a disparate impact on African-American employees of [Defendant's]." Caridad, 191 F.3d at 292. And where it is difficult to review the decision-making process because it involves subjective assessments by the decision-makers--here, the Administrative Manager--"significant statistical disparities are relevant to determining whether the challenged employment practice has a class-wide impact." Id. (citation omitted). Accordingly, in discrimination cases such as this, courts typically find commonality when the plaintiffs provide evidence demonstrating that being a member of a protected class has a statistically significant effect on the employment practice at issue. [7]

> 7   See, e.g., id. at 293 (finding commonality because "[t]he Class Plaintiffs submitted evidence that tends to establish that being Black has a statistically significant effect on an employee's likelihood of promotion"); Wright v. Stern, No. 01 Civ. 4437, 2003 U.S. Dist. LEXIS 11589, 2003 WL 21543539, *6 (S.D.N.Y. July 9, 2003) (finding that the commonality requirement was met where "plaintiffs' statistics demonstrate[d] common questions of fact because they tend[ed] to show that being African-American or Hispanic had an effect on an employee's promotion, compensation, and geographic assignment"); Latino Officers Ass'n City of New York v. City of New York, 209 F.R.D. 79, 89 (S.D.N.Y. 2003) (commonality was satisfied because "[t]he statistics submitted by plaintiffs . . . [were] sufficient to demonstrate common questions of fact because it tends to establish that being Latino or African-American [had] an effect on an officer's involvement and treatment in the NYPD's disciplinary system"); see also Jones v. Ford Motor Credit Co., No. 00 Civ. 8330, 2005 U.S. Dist. LEXIS 5381, 2005 WL 743213, *10 (S.D.N.Y. March 31, 2005) (finding that commonality was satisfied because plaintiffs "submitted evidence 'tend[ing] to establish' that being African-American ha[d] a statistically significant--and negative--effect on the terms of their financing agreements with FMCC") (quoting Caridad, 191 F.3d at 293).

[*17] In this case, Plaintiffs' evidence falls short. Defendant's alleged discriminatory practices had the greatest impact, according to Plaintiffs' own allegations, on terminations. But as already noted, Plaintiffs' own expert found *no evidence* of discrimination in Defendant's termination practices. Moreover, even assuming that the Court accepted as true Plaintiffs' expert's opinion that there is statistical evidence of discrimination in hiring, [8] it would still be insufficient. Plaintiffs do not assert a claim for hiring discrimination, and the proposed class is limited to black and dark-skinned employees "who were either terminated, passed over for promotion, subject to discipline, harassed and/or retaliated against." Compl. P 14.

> 8   To calculate the hiring rates, Plaintiffs' expert simply divided the total number of black or Hispanic employees at Defendant's other sites by the actual number of black or Hispanic employees hired in a given month. Mazur Report at 9. Defendant's expert, however, opined that Plaintiffs' expert's methodology for calculating hiring rates

Case 1:07-cv-06996   Document 11-2   Filed 01/14/2008   Page 15 of 17

2007 U.S. Dist. LEXIS 18397, *; 100 Fair Empl. Prac. Cas. (BNA) 1139

was flawed and his conclusions unreliable. Ali Saad Expert Report (Saad Report) at 1 (Affidavit of Jane B. Jacobs ("Jacobs Aff.") Ex. 5). Instead, Defendant's expert believed that "the best benchmark for comparing the hires at 2 Broadway would be the actual qualified applicant pool for the available positions at 2 Broadway." Id. at 7. Incidently, Plaintiffs' expert agrees. Mazur Report at 9. But this data was not available, so Defendant's expert relied on the "relevant labor market" data--*i.e.*, the market from which it is likely that Defendant would have gotten applicants--which Defendant's expert described as the "most common approach in statistical analysis of employment discrimination allegations" when applicant-pool data is unavailable. Saad Report at 7-8. This data is "readily available from the United States Census." Id. at 8.

Using this data, Defendant's expert compared the percentage of black security guards actually hired at 2 Broadway with the percentage of blacks in the external labor market of qualified security guards in New York City. The results revealed that, during the Administrative Manager's tenure at 2 Broadway, 51.29% of the total number of security guards hired by Defendant were black, while the percentage of blacks in the external labor market was 52.64%. Thus, Defendant's expert concluded, "there is no statistically significant difference between the proportion of blacks in the external labor market and among Defendant's actual hires during [the Administrative Manager's] tenure at 2 Broadway." Id. at 13.

Therefore, the accuracy of Plaintiffs' expert's evidence of hiring rates at 2 Broadway is questionable. And while the Court may weigh this conflicting evidence and make a factual determination that there is or is not evidence of hiring discrimination on a class-wide basis, In re Initial Public Offering Sec. Lit., 471 F.3d at 41-42, such a determination is not necessary; Plaintiffs' statistical evidence of discrimination in hiring is not relevant to whether there was class-wide discrimination in promotions, overtime, discipline, and terminations.

[*18] Therefore, Plaintiffs' statistical evidence fails to demonstrate class-wide discrimination because it does not tend to show that being black (or dark-skinned) had an effect on an employee's promotion, overtime, discipline, or termination.

"[A] statistical showing is not the only way to establish the existence of an aggrieved class." Attenborough, 238 F.R.D. at 96. Courts have discretion to rely on anecdotal evidence when, as here, the statistical evidence is weak. Hnot, 228 F.R.D. at 484. Here, in support of their motion for class certification, Plaintiffs submitted four affidavits--their own, as well as affidavits from two other employees--which purport to detail the discriminatory practices of Defendant and the Administrative Manager. See Locke Aff. Ex. D (Affidavit of Duval Johnson ("Johnson Aff.")), Ex. G (W. Harris Aff.), & Ex. H (J. Harris Aff.); Allen Aff. Yet these self-serving affidavits contain little in the way of factual evidence. They are insufficient to bridge the wide gap between Plaintiffs' own allegations that they were subjected to discrimination and the existence of a class of black employees who have suffered the same alleged [*19] injury as Plaintiffs. Falcon, 457 U.S. at 157-58.

### 3. Adequacy

The final prerequisite for class certification under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." This requires that "the proposed class representative . . . have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006) (citations omitted). [9] In addition, the court should assess the class representatives' credibility and trustworthiness, see, e.g., Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998), and whether they have sufficient knowledge of and involvement in the case so that they are able and willing to protect interests of class against possible competing interests of attorneys. Baffa, 222 F.3d at 61.

> 9   Plaintiffs' attorneys must also be "qualified, experienced and able to conduct the litigation." Baffa v. Donaldson, Lufkin & Jenrette Securities Corp., 222 F.3d 52, 60 (2d Cir. 2000) (citation omitted). This inquiry, however, while once part of Rule 23(a)(4)'s adequacy requirement, is now evaluated under Rule 23(g). Fed. R. Civ. P. 23(g); Attenborough, 238 F.R.D. at 100. Defendant's do not dispute that Plaintiffs' counsel are qualified, experienced, and able to conduct this litigation.

[*20] Defendant's argue that Plaintiffs cannot adequately represent the proposed class because they held supervisory positions with Defendant and, therefore, have interests that conflict with other class members whom Plaintiffs might have disciplined themselves. But the allegations are that it was the Administrative Manager who implemented and perpetuated the discriminatory policies, and that Plaintiffs themselves were victims of that discrimination. And "[i]f supervisory employees and supervisees are all subject to discrimination, all have an equal interest in remedying the discrimination." Hnot,

Case 1:07-cv-06996   Document 11-2   Filed 01/14/2008   Page 16 of 17

2007 U.S. Dist. LEXIS 18397, *; 100 Fair Empl. Prac. Cas. (BNA) 1139

228 F.R.D. at 486. Therefore, Plaintiffs' supervisory positions do not prevent them from adequately representing the proposed class. Id., see also, Kuck v. Berkey Photo, Inc., 81 F.R.D. 736, 740 (S.D.N.Y. 1979) (holding that plaintiffs' status as supervisory employees did not prevent them from making adequate class representatives because they themselves claimed to have been injured by defendant's alleged discriminatory practices).

But the inquiry doesn't end there. Commonality and typicality also "tend to merge with the adequacy-of-representation requirement" [*21] because they "serve as guideposts for determining whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 157 n.13; Attenborough, 238 F.R.D. at 101. As discussed above, however, there is no evidence that Plaintiffs' claims are common to or typical of a larger class of black security guards. As such, Plaintiffs' cannot be counted on to adequately protect other potential class members who might have claims that differ from Plaintiffs. See, e.g., id. Moreover, Plaintiffs are no longer employed by Defendant and would thus not benefit from any sort of injunctive relief. Their interest in receiving back-pay, compensatory, and punitive damages might prevent them from adequately protecting the interests of those class members who are still employed by Defendant and who might be more inclined to receive injunctive, rather than monetary relief. See, e.g., Rehwaldt v. Elec. Data Sys. Corp., No. 95-CV-876A, 2005 U.S. Dist. LEXIS 44849, 2005 WL 1130480, *3 (W.D.N.Y. April 13, 2005) (finding that plaintiff would not be an adequate [*22] class representative given that, as a former employee, she had no interest in injunctive relief).

### B. The Rule 23(b) Requirements

Plaintiffs assert that their class action can be maintained under either Rule 23(b)(2) because Defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." They also assert reliance on Rule 23(b)(3), because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Pl. Memo at 20, 23; Fed. R. Civ. P. 23(b)(2) & (3).

#### 1. Rule 23(b)(2)

A class action is appropriately maintained under Rule 23(b)(2) if the defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). When, as here, plaintiffs seek both injunctive and monetary relief, the court, [*23] in its discretion, must determine that the injunctive relief sought predominates over any compensatory and punitive relief in order for the case to proceed under this section. Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 164 (2d Cir. 2001). In so determining, the court must satisfy itself that: "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." Id. (citation omitted).

Injunctive relief does not predominate over Plaintiffs' claims for compensatory and punitive damages. Plaintiffs seek an injunction enjoining Defendant from discriminating against Plaintiffs and others similarly situated, but they also pray for $ 20,000,000.00 in compensatory and punitive damages--that's nearly $ 690,000 each for the 29 black employees that Plaintiffs allege are victims of Defendant's discriminatory policies. In addition, Plaintiffs state in their affidavits that as a result of their terminations, they have suffered, [*24] and continue to suffer, extreme mental distress and humiliation. Mere injunctive relief would not compensate Plaintiffs for that mental distress and humiliation. In fact, Plaintiffs both expressed no desire to be reinstated. See W. Harris Dep. at 92-93; J. Harris Dep. at 69-70. Finally, as Plaintiffs no longer work for Defendant and do not seek or want reinstatement, they would not benefit from any injunctive relief that this Court might award, another indication that Plaintiffs' primary interest is individual monetary compensation. See, e.g., Rehwaldt, 2005 U.S. Dist. LEXIS 44849, 2005 WL 1130480 at *2 (finding that class certification was inappropriate because many of the proposed class members no longer worked for the defendant employer, indicating that monetary damages predominated); Morgan v. Metropolitan District Comm., 222 F.R.D. 220, 235 (D.Conn. 2004) (holding that class certification was inappropriate under Rule 23(b)(2) because the proposed class contemplated former employees, and noting that "it is difficult to see how these former employees could meaningfully benefit from the declaratory relief Plaintiffs seek").

Therefore, because Plaintiffs request for compensatory [*25] and punitive damages predominate the total relief sought, class certification is not appropriate under Rule 23(b)(2).

#### 2. Rule 23(b)(3)

Class certification under Rule 23(b)(3) is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any

Case 1:07-cv-06996 Document 11-2 Filed 01/14/2008 Page 17 of 17

2007 U.S. Dist. LEXIS 18397, \*; 100 Fair Empl. Prac. Cas. (BNA) 1139

questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As already determined, however, there are no questions of law or fact common to the members of the proposed class so that a class action would be superior to Plaintiffs adjudicating their claims individually. At best, Plaintiffs have individual claims for discriminatory termination. They seek to represent a class of other plaintiffs who might also have claims for discrimination in promotions, overtime assignments, and discipline. Each individual claim would have its own provable set of facts and measure of damages. Therefore, class certification would be inappropriate. See, e.g., Barabin v. Aramark Corp., 210 F.R.D. 152, 162 (E.D.Pa. 2002) (denying class certification under [\*26] Rule 23(b)(3), even though plaintiffs all alleged that they were "subjected to frequent harassment and unjustified disciplinary sanctions by Caucasian supervisors not imposed on similarly situated Caucasian employees," because "the circumstances under which those acts of discrimination were committed and the resultant injuries are unique to each individual plaintiff," and "individual claims for damages would therefore require individualized evaluations and findings of the facts and defenses").

## CONCLUSION

Plaintiffs cannot satisfy all the requirements for class certification found in Rule 23(a) because there are no questions of law or fact common to the class, and Plaintiffs' claims are not typical of other class members' claims. Nor would Plaintiffs be adequate representatives of the proposed class even if commonality and typicality could be satisfied. Assuming Plaintiffs could meet all the Rule 23(a) requirements, class certification would not be appropriate under Rule 23(b)(2) because monetary, not injunctive, relief predominates Plaintiffs' claims. Also, under Rule 23(b)(3), a class action would not be superior to Plaintiffs bringing individual suits for employment discrimination.

[\*27] The motion for class certification is DENIED.

Dated: New York, New York

March 7, 2007

SO ORDERED

GEORGE B. DANIELS

United States District Judge