# EXHIBIT A-2

LEXSEE

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, v. MCIN-TYRE GROUP, LTD., Defendant.**

**Civil Action No. 07 CV 5458**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**2007 U.S. Dist. LEXIS 90847**

**December 11, 2007, Decided**
**December 11, 2007, Filed**

**CORE TERMS:** citation omitted, charging party, retaliation, harassment, unlawful acts, employment practices, class member, failure to state a claim, entitled to relief, retaliating, heightened, subjecting, workplace', notice, Civil Rights Act, employment discrimination, adversely affected, fair notice, different terms, conditions of employment, turned down, perpetrated, oft-quoted, plausibly, clarified, retooled, engaging, withhold, survive, pleader

**COUNSEL:** [*1] For Equal Employment Opportunity Commission, Plaintiff: Aaron R. DeCamp, LEAD AT-TORNEY, Equal Employment Opportunity Commission, Chicago, IL; Diane Ilene Smason, John C. Hendrickson, United States Equal Employment Opportunity Commission, Chicago, IL.

For Mcintyre Group, LTD, Defendant: Anne Elizabeth Duprey, LEAD ATTORNEY, John W. Powers, LEAD ATTORNEY, Seyfarth Shaw LLP, Chicago, IL.

**JUDGES:** George W. Lindberg, Senior United States District Judge.

**OPINION BY:** George W. Lindberg

**OPINION**

**MEMORANDUM AND ORDER**

On September 27, 2007, Plaintiff Equal Employment Opportunity Commission (the "EEOC") filed a complaint against Defendant McIntyre Group, Ltd. ("McIntyre") pursuant to Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. The complaint was filed "to correct unlawful employment practices on the basis of race and. . .provide appro-

priate relief to Charging Party Mark Hedgeman [("Hedgeman")] and various classes of employees who were adversely affected by such practices." It also alleges claims for "retaliation against Hedgeman and various classes of employees who were adversely affected by such practices." McIntyre moved to dismiss the EEOC's complaint pursuant to Federal Rules of Civil Procedure 8 [*2] and 12(b)(6) on October 18, 2007. McIntyre's motion is denied.

*Legal Standard -- Rule 12(b)(6) Motions*

Rule 12(b)(6) permits motions to dismiss a complaint for "failure to state a claim upon which relief can be granted. . . ." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Equal Employment Opportunity Comm'n v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (citation omitted). This requirement

> impose[s] two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the. . .claim is and the grounds upon which it rests.'. . .Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level;' if they do not, the plaintiff pleads itself out of court.

*Id.* (citations omitted); *see also Killingsworth v. HSBC Bank Nev., N.A.,* No. 06-1616, 2007 U.S. App. LEXIS 26124, 2007 WL 3307084, at *3 (7th Cir. Nov. 9, 2007)

("The [Supreme Court] explained in *Bell Atlantic* that the 'plaintiff's obligation to provide the 'grounds' of his [*3] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'. . .Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.'") (citations omitted). When determining whether the EEOC has cleared these hurdles, the Court "accept[s] the complaint's well-pleaded allegations as true and draw[s] all favorable inferences for [the EEOC]." *Killingsworth*, No. 06-1616, 2007 U.S. App. LEXIS 26124, 2007 WL 3307084, at *2 (citation omitted).

As an initial matter, the EEOC takes issue with McIntyre's interpretation of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). McIntyre's motion provides that "the Supreme Court clarified and redefined" the notice pleading standard stated in Rule 8(a)(2). *See* FED. R. CIV. P. 8(a)(2) ("A pleading which sets forth a claim for relief. . .shall contain. . .a short and plain statement of the claim showing that the pleader is entitled to relief. . . .). The EEOC disputes McIntyre's reading of *Bell Atlantic*. Specifically, the EEOC argues that the Supreme [*4] Court's decision did not "overhaul[] the notice pleading standard" or impose "a heightened fact pleading standard" in employment discrimination cases; rather, it "merely updated the oft-quoted language in *Conley v. Gibson*. . .that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The Court agrees with McIntyre that *Bell Atlantic* retooled federal pleading standards. *See* *Killingsworth*, No. 06-1616, 2007 U.S. App. LEXIS 26124, 2007 WL 3307084, at *2 ("In *Bell Atlantic*, the Supreme Court retooled federal pleading standards, retiring the oft-quoted *Conley* formulation that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (citations omitted). That noted, the Court also agrees that *Bell Atlantic* does not require the Court to apply a heightened pleading standard to complaints alleging employment discrimination. *See* 2007 U.S. App. LEXIS 26124, [WL] at *3; *see also* *Erickson v. Pardus*, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007); *Bell Atlantic*, 127 S. Ct. at 1974; [*5] *Concentra Health Servs., Inc.*, 496 F.3d at 782.

*Analysis*

In support of its motion, McIntyre argues that the "claims asserted by [the] EEOC. . .do not meet the federal pleading standard." Specifically, McIntyre contends that the complaint "is patently deficient. . .because it contains not a single factual allegation in support of [the] EEOC's claims of class-wide discrimination and retaliation." McIntyre adds that the "EEOC offers no facts whatsoever to support its broad class claims (or to support its claims that Hedgeman was individually subjected to discrimination and harassment, which are essentially intermingled with the class claims)." Finally, McIntyre suggests that because the EEOC's complaint "does not contain any factual allegations from which the identity of a single class member is apparent or may be discerned[,]. . .McIntyre cannot conceivably be on notice as to the claims against it or the grounds therefor."

Paragraph 7 of the EEOC's complaint provides, in part:

> Since at least 2004, [McIntyre] has engaged in unlawful employment practices at its facility in University Park, Illinois, in violation of. . .Title VII. . . .These unlawful employment practices, include, but are not [*6] limited to, the following:

> (a) discriminating against Hedgeman and a class of employees by subjecting them to harassment because of their race, African American;

> (b) subjecting a class of African American employees to different terms and conditions of employment by paying them less than similarly situated non-African American employees;

> (c) subjecting a class of African American employees to different terms and conditions of employment by failing to promote qualified African-American employees;

> (d) retaliating against [Hedgeman] by failing to promote him because he complained to [McIntyre] about race harassment

and/or discrimination in the workplace;

(e) retaliating against [Hedgeman] and a class of employees by terminating them because they complained to [McIntyre] about race harassment and/or discrimination in the workplace; [and]

(f) retaliating against a class of employees by engaging in conduct (withholding []or threatening to withhold[] employee bonuses because a charge of discrimination was filed with [the] EEOC) that intimidated, or had the effect of intimidating, employees from and created disincentives for engaging in protective [sic] activity.

(Compl., at P7.) After reviewing the [*7] allegations included in paragraph 7, the Court concludes that they provide McIntyre with fair notice of the EEOC's claims and the grounds upon which they rest. See _Concentra Health Servs., Inc.,_ 496 F.3d at 781-82 ("[A] plaintiff alleging employment discrimination on the basis of race, sex[,] or some other factor governed by 42 U.S.C. § 2000e-2 may allege the defendant's intent quite generally: 'I was turned down for a job because of my race' is all a complaint has to say.'. . .People have reasonably clear ideas of how a racially biased person might behave, and a defendant responding to an allegation of racial bias can anticipate the sort of evidence that may be brought to bear and can investigate the claim. . . .[O]nce a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim.") (citations omitted) [1]; see also _Erickson,_ 127 S. Ct. at 2200 ("[s]pecific facts are not necessary") (citations omitted); _Killingsworth,_ No. 06-1616, 2007 U.S. App. LEXIS 26124, 2007 WL 3307084, at *3. And when taken as true (see _Killingsworth,_ No. 06-1616, 2007 U.S. App. LEXIS 26124, 2007 WL 3307084, at *2), the Court [*8] finds that the allegations plausibly suggest that the EEOC is entitled to relief. See _Concentra Health Servs., Inc.,_ 496 F.3d at 776.

1 _Concentra Health Servs., Inc._ may be factually distinguished from the instant case. In _Concentra Health Servs., Inc.,_ the Seventh Circuit affirmed the dismissal of a retaliation complaint that did not "specify the 'conduct in the workplace'" reported by the charging party. 496 F.3d at 781. Specifically, the amended complaint did "not specify the nature of the conduct [that the charging party] reported to [the defendant] other than to indicate that [the charging party] reasonably believed that it violated Title VII." _Id._ at 776. In affirming the district court's dismissal, the Seventh Circuit noted that "[p]recedent confirms that a plaintiff like the EEOC alleging illegal retaliation on account of protected conduct must provide some specific description of that conduct beyond the mere fact that it is protected." _Id._ at 781. The Seventh Circuit therefore found that the "proper analogue for the [amended] complaint [wa]s not a complaint alleging racial discrimination in hiring; it [wa]s a complaint in which the plaintiff withholds the basis upon which she [*9] suspects her employer acted: 'I was turned down for a job for a reason forbidden by Title VII.' To permit the EEOC's complaint would reward obfuscation, a perverse result." _Id._ at 782.

With respect to McIntyre's argument that the EEOC's failure to identify class members mandates dismissal under Rule 12(b)(6), the Court notes that McIntyre cites to no authority to support its position. Specifically, the citation to _Bell Atlantic_ provided by McIntyre does not suggest that the EEOC must identify class members to survive a Rule 12(b)(6) motion. _See Bell Atlantic,_ 127 S. Ct. at 1964-65. Moreover, paragraph 7 provides (1) the relevant time period during which the alleged unlawful acts occurred, (2) the specific facility at which they allegedly occurred, (3) the race of the employees against which the alleged unlawful acts were perpetrated, (4) specific unlawful acts that were allegedly perpetrated, and (5) specific protected activities under Title VII that McIntyre allegedly acted to thwart. The Court therefore concludes that McIntyre's argument lacks merit. _See Erickson,_ 127 S. Ct. at 2200; _Killingsworth,_ No. 06-1616, 2007 U.S. App. LEXIS 26124, 2007 WL 3307084, at *3; _Concentra Health Servs., Inc.,_ 496 F.3d at 776.

**ORDERED:** [*10] McIntyre's Motion to Dismiss the Complaint [8] is denied. McIntyre is ordered to answer the EEOC's complaint on or before December 21, 2007.

**DATED:** December 11, 2007

/s/ George W Lindberg

George W. Lindberg

2007 U.S. Dist. LEXIS 90847, *

Senior United States District Judge

LEXSEE

**DARRYL CARTER, Plaintiff, v. ILLINOIS DEPARTMENT OF CORRECTIONS
and CHUCK GOBBLE, Defendant.**

**Case No. 02 C 5676**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

**2004 U.S. Dist. LEXIS 23681**

**September 24, 2004, Decided**

**DISPOSITION:** Defendants' motion for summary judgment granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, an African-American employee, sued defendants, his employer and his Caucasian supervisor, under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq. and the Civil Rights Act of 1866, 42 U.S.C.S. § 1981, alleging that he was discriminated against on the basis of race. Specifically, the employee alleged that his supervisor subjected him to a racially hostile work environment. Defendants moved for summary judgment.

**OVERVIEW:** Despite alleging that he was subject to harassment on a daily basis, the employee pointed to only three specific incidents in support of his racial harassment claim: (1) the supervisor's January 2, 2002, radio transmission; (2) the supervisor's assignment of shower duties to the employee's shift on March 5, 2002; and (3) the supervisor's allegedly overbearing supervision of the employee's performance. However, the employee did not point to any facts indicating that the incidents in question were discriminatory in nature. The supervisor's tone of voice during the radio incident may have been disrespectful or unprofessional, but the employee's conclusion that it was a race-based incident was unsupported. Similarly, the employee did not point to facts that would allow a reasonable juror to conclude that the supervisor's one-day assignment of shower duties to the employee's shift was a discriminatory act. Even if the employee had proved that there was a racial element to the supervisor's conduct, the incidents were too isolated and tepid to constitute actionable racial harassment under Title VII. In

the absence of additional proof, the employee's hostile work environment claim failed.

**OUTCOME:** Defendants' motion for summary judgment was granted.

**CORE TERMS:** harassment, undisputed, summary judgment, racially, hostile, work environment, correctional officer, discriminatory, shower, warden, inmate, staff, radio, genuine issue, superintendent, supervisor, actionable, pervasive, severe, disrespectful, supervisory, demeaning, surprise, prisoner, rank, Civil Rights Act, matter of law, discriminatory conduct, party opposing, unreasonably

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Opposition > General Overview*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN1]Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. The party opposing summary judgment may not rest upon the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. There is no genuine is-

2004 U.S. Dist. LEXIS 23681, *

sue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.

*Labor & Employment Law > Affirmative Action > General Overview*
*Labor & Employment Law > Discrimination > Harassment > Racial Harassment > Burdens of Proof > Severe & Pervasive Standards*
*Labor & Employment Law > Discrimination > Harassment > Racial Harassment > Hostile Work Environment*
[HN2]To prevail on a claim that he was subjected to a racially hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C.S. § 1981, the plaintiff must show, inter alia, that: (1) he was subject to unwelcome harassment based on his race, and (2) the harassment was severe and pervasive enough to alter the conditions of his employment and create a working environment that was objectively and subjectively hostile.

*Labor & Employment Law > Discrimination > Actionable Discrimination*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN3]In evaluating a hostile work environment claim on summary judgment, the court must consider myriad factors, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Title VII of the Civil Rights Act of 1964 is not a general civility code, and it is not intended to remedy complaints attacking the ordinary tribulations of the workplace, such as sporadic use of abusive language. Rather, harassment must be racially discriminatory in character or purpose to be actionable under Title VII.

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN4]Unsupported conclusions by other employees of an atmosphere of bias are insufficient to support a Title VII of the Civil Rights Act of 1964 claim absent specific allegations of discriminatory or harassing conduct directed at the plaintiff.

**COUNSEL:** [*1] For DARRYL CARTER, plaintiff: Armand L. Andry, Law Offices of Armand L. Andry, Oak Park, IL.

For ILLINOIS DEPARTMENT OF CORRECTIONS, defendant: Deborah Joyce Allen, Illinois Attorney General's Office, Chicago, IL. Victoria D Bousis, Office of the Illinois Attorney General, Chicago, IL.

For CHUCK GOBBLE, defendant: Deborah Joyce Allen, Illinois Attorney General's Office, Chicago, IL. Victoria D Bousis, Office of the Illinois Attorney General, Chicago, IL.

**JUDGES:** JOAN B. GOTTSCHALL, United States District Judge.

**OPINION BY:** JOAN B. GOTTSCHALL

**OPINION**

### MEMORANDUM OPINION AND ORDER

Judge Joan B. Gottschall

Plaintiff Darryl Carter has sued his employer, the Illinois Department of Corrections (the "IDOC"), and his supervisor, Superintendent Chuck Gobble, under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and the Civil Rights Act of 1866, 42 U.S.C. § 1981, alleging that he was discriminated against on the basis of race. Specifically, Carter alleges that Gobble, who is white, subjected him to a racially hostile work environment. Defendants have moved for summary judgment, arguing that the undisputed facts establish as [*2] a matter of law that (1) the alleged harassment was not severe or pervasive enough to be actionable, (2) Gobble's actions were not racially motivated, and (3) the IDOC cannot be held liable for Gobble's actions because it provided an effective mechanism to prevent and correct discrimination and Carter unreasonably failed to take advantage of the IDOC's remedial mechanism. For the reasons stated below, defendants' motion for summary judgment is granted.

### BACKGROUND

Carter, who is African-American, is a correctional officer at the IDOC's Stateville Correctional Center ("Stateville") in Joliet, Illinois. In March of 1991, Carter was promoted to his current rank of lieutenant. In that position Carter is responsible for the safety and sanitation of his unit, addressing inmate issues, supervising inmate movements, running inmate showers, ensuring inmate compliance with property rules, reporting unusual incidents, supervising lower-ranked officers, and carrying out orders given to him by superior officers.

Carter alleges that he became the target of racial harassment once Chuck Gobble became his supervisor. Gobble was promoted to the rank of superintendent and

transferred to Stateville [*3] around August 2001. As part of his duties, Gobble supervised two shifts that patrolled Stateville's "B and C Houses" -- Carter's shift, which worked from 7:00 a.m. to 3:00 p.m., and a later shift that worked from 3:00 p.m. to 11:00 p.m. Both shifts included African-American correctional officers and supervisory staff. All of the supervisory officers for Carter's shift were African-American. Although Carter sometimes refers to the 3-11 shift as the "all white" shift, it is undisputed that the supervisory staff of the 3-11 shift included two white officers, one Asian-American officer and one African-American officer. [1]

> 1   It is undisputed that the non-supervisory staff of both shifts included African-American correctional officers. However, neither Gobble nor Carter provide evidence of the precise racial makeup of the two shifts. Overall, as of January 31, 2002, the vast majority of correctional officers at Stateville, at both higher and lower ranks, were African-American.

Carter alleges that Gobble was disrespectful [*4] and demeaning to Carter and other African-American staff members. He alleges that he was "disrespected" on an almost daily basis and that nothing changed after Carter confronted Gobbles about the disrespectful treatment, nor after he complained to the IDOC's Affirmative Action Officer. [2] Carter requested a transfer from Gobble's supervision, but Stateville's warden, Ken Briley, refused Carter's request.

> 2   The IDOC's Affirmative Action Office Administrator is responsible for an IDOC antidiscrimination program. This administrator is responsible for educating staff about antidiscrimination policies and for taking complaints of discrimination and harassment. The IDOC posts in each facility an EEOC poster and a copy of the IDOC Affirmative Action Policy Statement that sets forth reporting procedures for discrimination and harassment. It is undisputed that the IDOC also provides each employee with a copy of this policy.

Although Carter alleges that he was repeatedly harassed, he points to only three specific incidents [*5] in support of his claims of racial harassment:

First, Carter claims that on January 2, 2002, Gobble used a demeaning tone of voice when issuing a command over the radio directed to Carter and another officer in Carter's shift. That incident arose out of Warden Briley's January 1, 2002 surprise search of the cells in B and C Houses. Briley conducted the search to root out any violations of Stateville's rules regarding prisoners' personal property. The Warden discovered property violations in both houses and informed Gobble of the deficiency. Apparently seeking an immediate correction, Warden Briley conducted a second surprise compliance check the next day, January 2. When Gobble learned of Briley's second compliance check, he radioed Carter and another officer on duty to notify them. In that radio transmission Gobble warned Carter and another officer that "there better not be any issues and I'm not going to take this for a second day in a row." Carter took offense at Gobble's warning and, on January 3, 2002, filed a written complaint alleging that Gobble's behavior was discriminatory. Carter had not previously lodged any complaints of discriminatory conduct by Gobble. In a January 11, 2002, response [*6] to Carter's incident report, the IDOC Affirmative Action Office found that Briley's radio message did not violate the IDOC's anti-discrimination policies.

Second, Carter claims that, on March 5, 2002, his shift was required to perform duties that should have been performed by the "all white" 3-11 shift. While the job descriptions of each shift require running prisoner showers and conducting prisoner shakedowns, traditionally Carter's shift performed the shakedowns, while the evening shift supervised the showers. On March 5, 2002, however, Gobble ordered Carter's shift to perform both tasks. Carter felt that those additional duties were given to his shift because the 3-11 shift was "all white." Carter filed a complaint in response to this incident on March 6. In a memorandum dated March 15, 2002, Warden Briley concluded that Carter's allegation of bias was without support.

Third, Carter claims that Gobble monitored his activities too closely and "stood over his shoulder" to make sure that tasks were completed. The only specific example cited by Carter is that in March of 2002, Gobble instructed Carter to make phone calls to obtain information regarding a hospitalized inmate. [*7] After doing so, Carter was instructed by Gobble to call for the information again. Carter alleges that the second call was clearly unnecessary and, therefore, harassment. As for other incidents of ongoing demeaning comments and unequal treatment, Carter provides no specifics except to say that he was spoken to "like a child" and that, when he was given assignments by Gobble, "within minutes" Gobble would "be standing over him" to see that the task was completed.

It is undisputed that Gobble was a hands-on manager: Gobble followed up with all officers regardless of their race or gender to confirm that tasks were completed. It is also undisputed that Gobble has never used a racial slur or other racially derogatory language in Carter's presence. Since the events alleged in the complaint, Carter has not had his pay or benefits reduced, and has not been transferred, demoted, suspended or dis-

ciplined. His duties and responsibilities have not changed during that period.

## ANALYSIS

[HN1]Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material [*8] fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. See Griffin v. Thomas, 929 F.2d 1210, 1212 (7th Cir. 1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Id.

Carter claims that he was subjected to a racially hostile work environment in violation of Title VII and Section 1981. [HN2]To prevail on that claim, Carter must show, inter alia, that: 1) he was subject to unwelcome harassment based on his race, and (2) the harassment was severe and pervasive enough to alter the conditions of his employment and create a working environment that was objectively [*9] and subjectively hostile. Mason v. Southern Ill. Univ. at Carbondale, 233 F.3d 1036, 1043 (7th Cir. 2000). Carter's hostile work environment claim falls short on both of those elements.

[HN3]In evaluating a hostile work environment claim on summary judgment, the court must consider myriad factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993). Title VII is not a "general civility code," and it is not intended to remedy complaints attacking "the ordinary tribulations of the workplace, such as sporadic use of abusive language. . . ." Faragher v. City of Boca Raton, 524 U.S. 775, 788, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998); see also Patton v. Indianapolis Public Sch. Bd., 276 F.3d 334, 339 (7th Cir. 2002) ("many employees have to put up with some amount of rude, arrogant or boorish behavior at work . . . Title VII does not guarantee a Utopian workplace, or even a pleasant one"). Rather, [*10] harassment must be racially discriminatory in character or purpose to be actionable under Title VII. Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340 at 345.

Despite alleging that he was subject to harassment on a daily basis, Carter points to only three specific incidents in support of his racial harassment claim: (1) Gobble's January 2, 2002 radio transmission, (2) Gobble's assignment of shower duties to Carter's shift on March 5, 2002, and (3) Gobble's allegedly overbearing supervision of Carter's performance. [3]

> 3  Carter attempts to supplement those three incidents of harassment by pointing to other, mostly unrelated, complaints of racial harassment lodged by other IDOC correctional officers. However, the relationship of those complaints to Carter's claim is tenuous. Most of the complaints by other officers did not involve Superintendent Gobble and some of the misconduct alleged in those complaints did not take place at Stateville. In all events, Carter does not point to any facts reflecting that he was the target of those alleged acts of harassment, that he witnessed those incidents or that he even knew of those incidents during the time period at issue. Although potentially relevant on other issues, such evidence is not relevant to the question whether Carter suffered severe and pervasive harassment. See Johnson v. City of Fort Wayne, Indiana, 91 F.3d 922, 938 (7th Cir. 1996) (holding that [HN4]"unsupported conclusions" by other employees of an "atmosphere of bias" are insufficient to support a Title VII claim "absent specific allegations of discriminatory or harassing conduct directed at [plaintiff]") (emphasis added).

[*11]  However, Carter does not point to any facts indicating that the three incidents in question were discriminatory in nature. While Carter need not prove that Gobble's actions were explicitly racist, Carter must, at least, show that Gobble's actions were discriminatory in purpose. Carter has not pointed to any facts that could allow him to fulfill that burden. Gobble's tone of voice in the January 2, 2002 radio incident may have been disrespectful or unprofessional. However, Carter's conclusion that this was a race-based incident is unsupported: the undisputed evidence confirms that Gobble issued his order because of the previous day's deficient performance during Warden Briley's surprise compliance check. Similarly, Carter has not pointed to any facts that would allow a reasonable juror to conclude that Gobble's one-day assignment of shower duties to Carter's shift was a discriminatory act. Although it may have been uncommon for Carter's shift to perform shower duty, it is undisputed that such duties fall within Carter's job description. Moreover, there is no evidence that the allocation of

Page 4

2004 U.S. Dist. LEXIS 23681, *

duties between shifts was racially motivated: the undisputed evidence reflects that both shifts [*12] included non-white correctional officers and non-white supervisors.

Even if Carter could prove that there was a racial element to Gobble's conduct, these three incidents are too isolated and tepid to constitute actionable racial harassment under Title VII. Absent evidence of further specific acts of discrimination directed at Carter, Carter's hostile work environment claim must fail.

Because no reasonable jury could conclude that Carter suffered a racially hostile work environment under Title VII, defendants are entitled to summary judgment.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is granted.

ENTER:

JOAN B. GOTTSCHALL

United States District Judge

DATED: September 24, 2004

LEXSEE



Positive
As of: Jan 09, 2008

**DOROTHY TURNER, Plaintiff, v. MICRO SWITCH, a division of HONEYWELL, INC., Defendant.**

**No. 98 C 50276**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION**

**2001 U.S. Dist. LEXIS 63; 80 Empl. Prac. Dec. (CCH) P40,514**

**January 3, 2001, Decided
January 3, 2001, Filed**

**NOTICE:**    [*1] NOT FOR PUBLICATION

**DISPOSITION:**    Micro Switch's Rule 56 motion granted, its motion to strike denied, and its request for oral argument denied. Turner's motion to strike granted. Cause dismissed in its entirety.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant moved for summary judgment in plaintiff's case pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq.

**OVERVIEW:** Plaintiff worked for defendant manufacturer as a group leader. When defendant abolished plaintiff's position, it created a technical associate position that required many group leader skills as well a higher level of technical expertise. Although previous group leaders were given the first opportunity to fill the new technical associate positions, plaintiff was not one of those selected, because another person had seniority. Plaintiff sued, claiming that she was denied promotions because of her race, that she was subjected to a racially hostile work environment, and that she suffered employment retaliation after she filed an Equal Employment Opportunity claim. The court held that, while plaintiff did establish a prima facie case of unlawful discrimination, defendant's articulated reason for not promoting plaintiff was non-pretextual. Plaintiff failed to bring forth evidence showing discrimination or harassment to sup-

port her allegations of a racially hostile work environment. Plaintiff's claim of a cold and unfriendly atmosphere and failure to greet her were trivial matters that did not rise to the level of actionable retaliation.

**OUTCOME:** The court granted defendant's summary judgment motion because defendant's articulated reason for not promoting plaintiff was non-pretextual, plaintiff failed to show evidence of a hostile work environment, and a cold, unfriendly atmosphere and failure to greet plaintiff was not actionable retaliation.

**CORE TERMS:** promotion, harassment, coworker, supervisor, work environment, hostile, retaliation, racial slurs, nigger, seniority, summary judgment, candidates, subjected, prima facie case, qualifications, racially, hiring, deposition, unfriendly, promoted, falsely, moving party, conclusory allegations, discrimination claim, race discrimination, direct evidence, protected activity, self-serving, factfinder, actionable

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Opposition > General Overview*
*Civil Procedure > Summary Judgment > Supporting Materials > General Overview*

2001 U.S. Dist. LEXIS 63, *; 80 Empl. Prac. Dec. (CCH) P40,514

[HN1]Under U.S. Dist. Ct., N.D. Ill., R. 56.1(a), the moving party may controvert additional material facts submitted by the opposing party pursuant to U.S. Dist. Ct., N.D. Ill., R. 56.1(b). However, its denials must be based on materials already part of the record unless the opposing party's Rule 56.1(b) statement of additional facts raises unanticipated new issues entirely outside the scope of the moving party's motion for summary judgment.

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN2]Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The question to be determined is whether, if the record of the summary judgment proceeding were the record at trial, a reasonable fact finder could find in favor of the non-moving party. The record is to be examined in the light most favorable to the non-movant, but conclusory allegations will not suffice. Intent and credibility are crucial issues in employment discrimination cases and, therefore, the summary judgment standard is applied with added rigor in such cases, but summary judgment will not be defeated just because motive or intent are involved.

*Civil Rights Law > Practice & Procedure > Continuing Violations*
*Governments > Legislation > Statutes of Limitations > Extension & Revival*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Statutes of Limitations > Continuing Violations*
[HN3]Under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000 e et seq., a charging party must file a charge with the Equal Employment Opportunity Commission within 300 days after the allegedly unlawful employment practice occurred. 42 U.S.C.S. § 2000e-5(e)(1).

*Labor & Employment Law > Discrimination > Actionable Discrimination*
[HN4]Under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000 e et seq., it is unlawful for an employer to decide not to promote an employee because of her race. 42 U.S.C.S. § 2000e-2(a)(1). The two accepted ways of establishing that an employer has discriminated are by direct evidence (taking the form of, "I did not promote you because of your race"), or by indirect evidence.

*Labor & Employment Law > Discrimination > Disparate Treatment > General Overview*
[HN5]Under the indirect, burden-shifting method, a plaintiff must initially establish a prima facie case of unlawful discrimination by demonstrating: (1) she is in a protected class; (2) she was qualified for the promotion; (3) she did not receive the promotion despite her qualifications; and, (4) a person not in the protected class was promoted instead. The burden then shifts to defendant, which must articulate a legitimate, non-discriminatory reason for why plaintiff was not promoted. The burden then shifts back to the plaintiff to produce evidence from which a reasonable factfinder could conclude defendant's articulated reason is pretextual, meaning it is a lie or completely lacks a factual basis.

*Labor & Employment Law > Discrimination > Disparate Treatment > General Overview*
[HN6]It is well-established that a plaintiff's own self-serving statements about her qualifications is insufficient to carry the day. An employee's self-serving statements about her ability do not establish pretext. A plaintiff's own opinions about his performance or qualifications do not give rise to a material factual dispute.

*Civil Procedure > Summary Judgment > Supporting Materials > General Overview*
*Evidence > Hearsay > Rule Components > Statements*
[HN7]The court does not consider hearsay statements that are otherwise inadmissible at trial at the summary judgment stage.

*Labor & Employment Law > Discrimination > Harassment > Racial Harassment > Employment Practices > Compensation*
*Labor & Employment Law > Discrimination > Racial Discrimination > Employment Practices > Compensation*
*Labor & Employment Law > Discrimination > Racial Discrimination > Proof > Circumstantial & Direct Evidence*
[HN8]A plaintiff with a wage discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., must meet demanding standard of persuading factfinder employer intended to discriminate.

2001 U.S. Dist. LEXIS 63, *; 80 Empl. Prac. Dec. (CCH) P40,514

*Labor & Employment Law > Discrimination > Harassment > Racial Harassment > Burdens of Proof > Employee Burdens*
*Labor & Employment Law > Discrimination > Harassment > Racial Harassment > Burdens of Proof > Severe & Pervasive Standards*
*Labor & Employment Law > Discrimination > Harassment > Racial Harassment > Hostile Work Environment*
[HN9]An employer may be liable for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., if an employee is subject to a hostile work environment based on her race. To recover, a plaintiff must show: (1) she was subjected to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was severe and pervasive so as to alter the conditions of her employment and create a hostile or abusive work environment; and (4) there is a basis for employer liability. Regarding liability, if the supervisor created the hostile work environment and the employee suffered a tangible employment action, the employer is strictly liable. If the employee does not suffer a tangible employment action, the employer may raise an affirmative defense involving its use of reasonable care in preventing and correcting the harassment and the employee's failure to take advantage of any preventive or corrective opportunities.

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN10]Regarding discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., if the coworkers created the hostile work environment, the employer is liable only when the employee shows the employer was negligent in discovering or remedying the harassment.

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN11]When a plaintiff alleges both her supervisor and her coworkers created a hostile work environment, the court looks at the totality of the circumstances in evaluating her claim. To prevail, a plaintiff must show her work environment was both subjectively and objectively hostile.

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*

[HN12]For alleged incidents of racism to be relevant to showing the severity or pervasiveness of a plaintiff's hostile work environment, the plaintiff must know of them.

*Labor & Employment Law > Discrimination > Retaliation > General Overview*
[HN13]When the plaintiff has not produced any direct evidence of retaliation, the court analyzes her claim under the familiar McDonnell Douglas burden-shifting method. To establish a prima facie case of retaliation, the plaintiff must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action subsequent to her participation; and (3) a causal connection exists between the adverse employment action and her participation in the protected activity.

*Labor & Employment Law > Discrimination > Retaliation > General Overview*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN14]Under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., not everything that makes an employee unhappy is an actionable adverse action. For an employment action to be actionable, it must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

**COUNSEL:** FOR PLAINTIFF: Michael K. Havrilesko, Havrilesko & Associates, Rockford, IL.

FOR DEFENDANT: Kevin J. Luther, Heyl, Royster, Voelker & Allen, Rockford, IL.

FOR DEFENDANT: Pamela J. King, Micro Switch, Freeport, IL.

**JUDGES:** PHILIP G. REINHARD, JUDGE, UNITED STATES DISTRICT COURT.

**OPINION BY:** PHILIP G. REINHARD

**OPINION**

***MEMORANDUM OPINION AND ORDER***

*Introduction*

On August 28, 1998, plaintiff Dorothy Turner filed a complaint against defendant Micro Switch, a division of Honeywell, Inc. ("Micro Switch"), pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.* [1] Micro Switch has filed

a motion for summary judgment pursuant to Fed.R.Civ.P. 56, a request for oral argument, and a motion to strike certain affidavits Turner proffered in support of her response to Micro Switch's Rule 56 motion. Turner has orally moved to strike additional materials Micro Switch filed in response to Turner's LR56.1(b) statement of additional facts. [*2] This court has jurisdiction over Turner's claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). Venue is proper as the alleged events occurred in this district and division. See 28 U.S.C. § 1391(b).

> 1  Turner is also a plaintiff in another lawsuit currently pending before this court, Thomas v. Honeywell, No. 00 C 50022. Although neither party has addressed the Thomas case, the court notes ordinary principles of issue and/or claim preclusion apply.

*Facts*

Turner (African-American), hired in 1971, currently works at Honeywell's Micro Switch division in Department 280, a department which places resistors or conductors on ceramic capacitors through thick film printing. (LR56.1(a) PP 1-2) Turner was a Group Leader for thirteen years but in 1995 all Group Leader positions were eliminated in Micro Switch's factories. (Id. P 4) At that time, Turner's job title changed to FN4 Team Member. When the company [*3] abolished the Group Leader position, it simultaneously created the Technical Associate position. (Id. P 5) This position required many of the skills of the Group Leader position, but required a higher level of technical expertise. Employees who were previously classified as Group Leaders were given the first opportunity to fill the Technical Associate positions. In filling the Technical Associate positions, candidates' personnel files were reviewed and the most qualified candidates were interviewed. If two or more candidates were equally well qualified and did equally well in the interview process, seniority was generally used to break the tie. (Id. P 6)

On December 17, 1995, Turner, who held a Group Leader position on the second shift at the time, applied for a Technical Associate position. She and Fred Balles (Caucasian), a first shift Group Leader, were the only candidates. Balles was chosen for the position. Micro Switch states its reason for choosing Balles because he was deemed to have stronger technical skills. (Id. P 8) Turner did not complain to any member of management that she believed the decision to chose Balles was racially motivated. (Id. P 9) [2] [*4]

> 2  In her affidavit, submitted in response to Micro Switch's motion, Turner claims she complained to Human Resources about the decision. (Pl. App., Exh. A, Turner Aff., P 3) However, in her deposition, Turner stated she did not complain to anyone. The affidavit impermissibly conflicts with Turner's earlier deposition testimony so as to create only a sham issue of fact, and the court credits her deposition testimony. See Bank of Ill. v. Allied Signal Safety Restraint Sys., 75 F.3d 1162, 1170 (7th Cir. 1996).

A few months later, in early 1996, Balles was promoted to another Technician position and as a result, again the first shift Technical Associate position became available. Five candidates applied, including Turner. Cathy Wilson, with eighteen years of service (as compared to Turner's twenty-five years of service at that time) was chosen. Micro Switch states its reason for choosing Wilson was because the department supervisor thought she would be a better fit for the job because of her technical [*5] skills. (Id. P 10) There is no evidence in the record as to whether Turner complained at the time to any member of management that she believed the decision was racially motivated.

In July 1997, an FN4 Team Member position on first shift was posted in Department 280. At that time, Turner held an FN4 Team Member position on the second shift in that department. Nine candidates applied for the job. John Ginger, who had more seniority than Turner, was chosen. (Id. P 11) As its articulated reason for its decision, Micro Switch states the hiring supervisor thought the candidates were close in qualifications and used seniority as the tie breaker. (Id.)

According to Turner, a supervisor, Mike Entmeier, told a coworker that Turner would never work on first shift as long as he had anything to do with it. (LR56.1(b) P 53) After she was turned down for the promotion, Turner took an FN3 Team Member position on first shift in another department, with no wage protection. (It is not clear from the record whether this was a lower paying position. LR56.1(a) P 12) She worked in that department from March 10, 1997, through November 14, 1997.

On November 14, 1997, Tom Mabrey, Vice President [*6] of Micro Switch's electronics business, and George "Ralph" Hill, Human Resources Director, met with Turner. She was then transferred to a first shift FN4 Team Member position in Department 280, effective November 17, 1997, with back pay. The parties dispute the company's motivation for this transfer. The company states it made the decision to transfer Turner based on the conversation between Turner, Mabrey and Hill (although it never explains to the court what was said during this conversation). Turner maintains the company transferred her to the position she wanted because of the formal complaint she had filed with the United States

Department of Labor, Office of Federal Contract Compliance Programs ("OFCCP"), which touched off an investigation. (LR56.1(b) P 57)

After Turner returned to Department 280, her supervisor, Charmaine Munz, was cold and unfriendly to her. (*Id.* P 58) During monthly meetings, Munz told the employees they were overstaffed and the possibility existed that some employees would be laid off. Turner interpreted these comments as Munz intentionally causing the employees to resent Turner because she was the most senior member of the department and would cause [*7] others to be laid off. Thereafter, Turner states coworkers refused to return her greetings, refused to recertify her on jobs she had done for years, and falsely accused her of failing to follow procedures. (*Id.* P 60) She was also falsely accused of lying on her time card.

There is evidence coworkers used racial slurs at work, including use of the word "nigger," although Turner never heard such racial slurs and specifically never heard the word "nigger" used in her presence. (LR56.1(a) PP 24-26; Pl. Exh. 2, Robinson Aff., PP 3-5, Pl. Exh. 3, Schwartz Aff., PP 3, 5) Turner reported use of the word "nigger" to her supervisor, Mark Gallagher. (LR56.1(b) P 70) He told her there was nothing he could do about it because Turner's knowledge was based on hearsay. (*Id.)*

### Preliminary Matters

Micro Switch has moved to strike the affidavits of Debbie Schwartz and Victoria Robinson and portions of Turner's affidavit, all of which were filed in support of Turner's response to Micro Switch's motion for summary judgment and corresponding LR56.1(a) statement of facts. Micro Switch argues Schwartz' and Robinson's affidavits should be stricken because they do not address any incidents of [*8] harassment or retaliation against Turner.

It is true incidents about which Schwartz and Robinson attest, if Turner never knew about them, are not "harassment" of Turner. *Mason v. Southern Ill. Univ.,* 233 F.3d 1036, 2000 WL 1779187, at *7 (7th Cir. 2000). However, such evidence could be relevant to show the employer's constructive knowledge of the harassment. 233 F.3d at 1046, *Id.* *7 n.8. The court finds Micro Switch's argument goes to the weight to be accorded such testimony, not its admissibility, and will be further discussed *infra.* Likewise, the court finds the majority of Micro Switch's arguments regarding portions of Turner's affidavit go to the weight to be accorded her statements, not the admissibility, which the court will address *infra.* Micro Switch's motion to strike is denied.

At a status hearing on December 6, 2000, Turner orally moved to strike additional materials Micro Switch

submitted in support of its reply brief and responses to Turner's LR56.1(b) statement of additional facts (the "Hill Affidavit II") as being in derogation of LR56.1. The court agrees. [HN1]Under LR56.1(a), the moving party may controvert additional material facts submitted [*9] by the opposing party pursuant to LR56.1(b). However, its denials must be based on materials already part of the record unless the opposing party's LR56.1(b) statement of additional facts raises unanticipated new issues entirely outside the scope of the moving party's motion for summary judgment. Such is not the case here, and Turner's oral motion to strike the Hill Affidavit II is granted.

### Analysis

[HN2]Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The question to be determined is whether, if the record of the summary judgment proceeding were the record at trial, a reasonable fact finder could find in favor of the non-moving party. *Tobey v. Extel/JWP, Inc.,* 985 F.2d 330, 332 (7th Cir. 1993). The record is to be examined in the light most favorable to Turner, but conclusory allegations will not suffice. *Miller v. Borden, Inc.,* 168 F.3d 308, 312 (7th Cir. 1999). [*10] Intent and credibility are crucial issues in employment discrimination cases and, therefore, the summary judgment standard is applied with added rigor in such cases, but summary judgment will not be defeated just because motive or intent are involved. *Id.* (citations omitted).

In this case, Turner alleges three theories of discrimination: she was discriminatorily denied promotions because of her race, she was subjected to a racially hostile work environment, and she was retaliated against because she complained to the OFCCP and the Equal Employment Opportunity Commission ("EEOC") about race discrimination. The court will address each theory separately.

#### B. *Race Discrimination*

Micro Switch argues Turner is time-barred from pursuing claims based on two promotion decisions she challenges, and the court agrees. The first promotion decision at issue was in December 1995 and the second promotion decision at issue was in early 1996. (LR56.1(a) PP 7, 10) Turner did not file her complaint with the EEOC until March 25, 1998. (*Id.* P 38) [HN3]Under Title VII, a charging party must file a charge with the EEOC within 300 days after the alleg-

Case 1:07-cv-06996    Document 11-3    Filed 01/14/2008    Page 18 of 21

2001 U.S. Dist. LEXIS 63, *; 80 Empl. Prac. Dec. (CCH) P40,514

edly unlawful employment practice occurred. [*11] 42 U.S.C. § 2000e-5(e)(1). Each promotion was a discrete decision which Turner knew about at the time the decision was made. Based on these facts, the continuing violation theory does not apply and her promotion claims based on the 1995 and 1996 promotions are time-barred. See Jones v. Merchants Nat'l Bank & Trust Co., 42 F.3d 1054, 1058 (7th Cir. 1994) (continuing violation theory inapplicable to failure to promote claims). Likewise, any claims of discriminatory pay based on her failure to obtain these promotions are likewise barred. See id.

Turner also contests a July 1997 promotion to the first shift FN4 position. (LR56.1(a) P 11) [HN4]Under Title VII, it is unlawful for an employer to decide not to promote an employee because of her race. See 42 U.S.C. § 2000e-2(a)(1). The two accepted ways of establishing that an employer has discriminated are by direct evidence (taking the form of, "I did not promote you because of your race"), or by indirect evidence. Hasham v. California State Bd. of Equalization, 200 F.3d 1035, 1044 (7th Cir. 2000). Here, Turner is apparently proceeding under the indirect [*12] method of proof, as she has proffered no direct evidence of discrimination.

[HN5]Under the indirect, burden-shifting method, Turner must initially establish a prima facie case of unlawful discrimination by demonstrating: (1) she is in a protected class; (2) she was qualified for the promotion; (3) she did not receive the promotion despite her qualifications; and, (4) a person not in the protected class was promoted instead. Id. at 1044. [3] Turner has done this. The first, second, and fourth elements are not in dispute. (Def. Memo., p. 12) As for the third element, Micro Switch argues Turner did not suffer an adverse employment action because in November of 1997, the company placed Turner in the first shift FN4 position with back pay. While such action would go to the issue of damages, it does not erase the fact that in July 1997 Turner suffered an adverse employment action.

    3 Some of the cases list the prima facie elements somewhat differently, stating the plaintiff must establish, as the fourth element, that the employee promoted was not more qualified than the plaintiff. See, e.g., Payne v. Milwaukee County, 146 F.3d 430, 434 (7th Cir. 1998).

[*13] The burden now shifts to Micro Switch, which must articulate a legitimate, non-discriminatory reason for why Turner was not promoted. See Ghosh v. Indiana Dep't of Envtl. Mgmt., 192 F.3d 1087, 1091 (7th Cir. 1999). Micro Switch has done this; according to the hiring supervisor, she thought Turner and Ginger were close in qualifications and used seniority to break the tie.

The burden now shifts back to Turner to produce evidence from which a reasonable factfinder could conclude Micro Switch's articulated reason is pretextual, meaning it is a lie or completely lacks a factual basis. Jordan v. Summers, 205 F.3d 337, 343 (7th Cir. 2000); Perdomo v. Browner, 67 F.3d 140, 145 (7th Cir. 1995). Turner has failed to produce any evidence from which a reasonable factfinder could infer pretext. Turner never even explicitly contests that she was more qualified than Ginger. (LR56.1(b) P 11) Instead, Turner apparently argues that seniority was not the deciding factor in the previous two promotions that went to Balles and Wilson. Yet, for this argument to succeed Turner would have to show she was at least as qualified as Balles and Wilson because [*14] she admits seniority comes into play under Micro Switch's policy only if the applicants are equally qualified. (LR56.1(a) P 6) Turner's evidence in support of this is her own self-serving statement to that effect. (LR56.1(b) PP 8, 10) [HN6]It is well-established that a plaintiff's own self-serving statements about her qualifications is insufficient to carry the day. See, e.g, Fortier v. Ameritech Mobile Communications, Inc., 161 F.3d 1106, 1114 (7th Cir. 1998) (employee's self-serving statements about her ability do not establish pretext); Rabinovitz v. Pena, 89 F.3d 482, 487 (7th Cir. 1996) (plaintiff's own opinions about his performance or qualifications do not give rise to a material factual dispute).

Turner also apparently relies on Entmeier's statement, that Turner would never work on first shift as long as he had anything to do with it, as evidence of discrimination. Turner's knowledge of this statement is based on hearsay, and [HN7]the court does not consider hearsay statements that are otherwise inadmissible at trial at the summary judgment stage. Hong v. Children's Mem'l Hosp., 993 F.2d 1257, 1265 (7th Cir. 1993), cert. denied, [*15] 511 U.S. 1005, 128 L. Ed. 2d 48, 114 S. Ct. 1372 (1994). Even if the court were to consider the statement, Turner's inference that Entmeier's statement somehow refers to her race is impermissibly speculative. Thus, Turner's failure-to-promote claim fails. [4]

    4 The court's disposition of the promotion decisions at issue in the context of Turner's discrimination claim apply with equal force to her racial harassment claim.

Turner also claims she was discriminatorily denied pay raises. In support of this claim, Turner proffers only her own testimony that she felt she should be at the top of the pay scale because of her seniority and mastery of the job. However, she offered no evidence of other non-protected employees in similar jobs with less seniority than her who were earning higher wages than her. This is the kind of evidence Turner should have proffered in support of her claim. See, e.g., Chambers v.

Case 1:07-cv-06996    Document 11-3    Filed 01/14/2008    Page 19 of 21

2001 U.S. Dist. LEXIS 63, *; 80 Empl. Prac. Dec. (CCH) P40,514

_American Trans Air, Inc._, 17 F.3d 998, 1003-04 (7th Cir.), _cert. denied_, [*16] 513 U.S. 1001, 130 L. Ed. 2d 419, 115 S. Ct. 512 (1994). In addition to failing to establish a prima facie case of wage discrimination, Turner has not produced any circumstantial evidence tending to show Micro Switch intended to suppress her wages based on her race. _See Loyd v. Phillips Bros., Inc._, 25 F.3d 518, 525 (7th Cir. 1994) ([HN8]plaintiff with Title VII wage discrimination claim must meet demanding standard of persuading factfinder employer intended to discriminate). Thus, her Title VII wage discrimination claim fails.

### C. _Racial Harassment_

Turner also contends she was subjected to racial harassment at work. [HN9]An employer may be liable for discrimination under Title VII if an employee is subject to a hostile work environment based on her race. _Mason_, 2000 WL 1779187, at *5. To recover, Turner must show: (1) she was subjected to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was severe and pervasive so as to alter the conditions of her employment and create a hostile or abusive work environment; and (4) there is a basis for employer liability. _Id._ Regarding liability, if the supervisor [*17] created the hostile work environment and the employee suffered a tangible employment action, the employer is strictly liable. _Id._ If the employee does not suffer a tangible employment action, the employer may raise an affirmative defense involving its use of reasonable care in preventing and correcting the harassment and the employee's failure to take advantage of any preventive or corrective opportunities. _Id._ n.4. [HN10]If the coworkers created the hostile work environment, the employer is liable only when the employee shows the employer was negligent in discovering or remedying the harassment. _Id._ *5.

Here, [HN11]Turner is alleging both her supervisor, Munz, and her coworkers created a hostile work environment (Compl. p. 5, P V), so the court will look at the totality of the circumstances in evaluating her claim. _See Mason_, 2000 WL 1779187, at *6. To prevail, Turner must show her work environment was both subjectively and objectively hostile. Turner's claim fails because from an objective viewpoint she has not, at a minimum, shown she was subjected to harassment so severe and pervasive as to alter the conditions of her employment and create a hostile or abusive [*18] work environment. _See McPhaul v. Board of Comm'rs_, 226 F.3d 558, 566 (7th Cir. 2000). Turner alleges when she received the promotion to the FN4 position on first shift in department 280, during monthly meetings Munz raised the possibility of layoffs. (LR56.1(b) P 59) Turner interpreted Munz' statements as stirring hostility among coworkers against Turner. (_Id._) Turner reasons that since she was the newest yet most senior employee in the department, coworkers blamed her for causing them to get laid off. Turner's theory is based entirely on speculation; by Turner's own account, Munz never mentioned Turner by name, never implied that Turner was the cause of any layoffs, and no layoffs ever occurred.

Even if Turner's speculative theory were accepted as true, it does not support a claim that she was subjected to a hostile work environment because of her race. Turner alleges that as a result of Munz' comments during the meeting, coworkers would not return her greetings, refused to recertify her on jobs she had done for many years, falsely accused her of failing to follow procedures, and falsely accused her of time card violations. (LR56.1(b) PP 60-61) By Turner's own [*19] theory, these actions were borne out of resentment to Turner because of her seniority, not her race.

Turner also contends she was subjected to a racially hostile and offensive work environment because racial slurs, including the racially offensive word, "nigger," were used in the workplace. (Pl. Resp., p. 3) However, Turner's evidence in support of this contention is lacking. First, Turner herself never heard any racial slurs, and the impact of second hand harassment is obviously not as great as the impact of harassment directed at the plaintiff. _McPhaul_, 226 F.3d at 567. Second, Turner has offered affidavits from two coworkers who state they heard racial slurs in the workplace, but neither coworker offers more detail than that.

Specifically, Victoria Robinson states she has heard white employees use racial slurs, including the term "nigger," and that it was common knowledge the second shift was referred to as the "nigger shift." (Pl. Exh. 2, Robinson Aff., PP 3-4) She does not specify how often she heard such slurs, when she heard them, who made them, or to whom they were directed. _See McPhaul_, 226 F.3d at 567. In fact, her affidavit was originally [*20] drafted for her to attest that she had "often" heard white employees use racial slurs, but she scratched out the word "often."

The statements of a coworker, Debbie Schwartz, are equally vague. (Pl. Exh. 3, Schwartz Aff., P 3) Moreover, Schwartz does not state that she told Turner about the racial slurs she heard; in fact, she crossed out the typed paragraph in her affidavit which stated she had reported the racial slurs to Turner. (_Id._) [HN12]For alleged incidents of racism to be relevant to showing the severity or pervasiveness of a plaintiff's hostile work environment, the plaintiff must know of them. _Mason_, 2000 WL 1779187, at *7. In short, the conclusory allegations in the affidavits of Schwartz and Robinson, completely lacking specific concrete facts, do not create a factual dispute. _McPhaul_, 226 F.3d at 567 (coworker's

2001 U.S. Dist. LEXIS 63, *; 80 Empl. Prac. Dec. (CCH) P40,514

use of racial epithet "nigger" on a weekly basis insufficient to establish a hostile work environment); *see also Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (district court properly struck affidavits with conclusory allegations, completely lacking specific, concrete facts).

The court [*21] also finds Turner's reliance on *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668 (7th Cir. 1993), is inapposite. In *Rodgers,* 12 F.3d at 675, the plaintiff's supervisor directed racial epithets at the plaintiff, including use of the word "nigger" in the plaintiff's presence on two occasions. The Seventh Circuit stated that perhaps no single act can more quickly create an abusive working environment than a supervisor's use of the word "nigger" in the presence of his subordinates. *Id.* The plaintiff also produced evidence of the profound psychological effect the supervisor's racist comments had on him. Here, Turner does not have evidence of any supervisor directing racial comments at her, and has not shown that any racial slurs interfered with her work performance or were physically threatening or humiliating to her.

Turner also points to the purported statement of the General Manager, Ron Sieck, who allegedly told Dennis Jordan, then the President of the Freeport branch of the NAACP, that using the word "nigger" was not grounds for firing an employee. (LR56.1(b) P 80) Turner argues Sieck's statement is evidence of the company's lackadaisical [*22] attitude towards race discrimination and harassment. Because she has not brought forth evidence tending to show discrimination or harassment, the court finds Sieck's statement to be of little value.

### D. *Retaliation*

Turner also alleges she was retaliated against after filing a complaint with the OFCCP in August 1997 and an EEOC charge in March 1998. (LR56.1(b) P 45; Def. Exh. 4, Compl. P 7(b)(i), p. 6, P VII) [HN13]Because Turner has not produced any direct evidence of retaliation, the court will analyze her claim under the familiar *McDonnell Douglas* burden-shifting method. To establish a prima facie case of retaliation, Turner must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action subsequent to her participation; and (3) a causal connection exists between the adverse employment action and her participation in the protected activity. *Bell v. Environmental Protection Agency,* 232 F.3d 546, 554, 2000 WL 1661834 (7th Cir. 2000).

Many of the facts which form the basis of Turner's discrimination and harassment claims also form the basis of her retaliation claim. Specifically, Turner alleges [*23] she was denied promotions in 1997, 1998, and 1999 in retaliation for filing charges with the OFCCP

and EEOC. (LR56.1(b) P 46) The 1997 promotion occurred prior to the filing of any discrimination charges and, therefore, cannot form the basis of a retaliation claim.

As for 1998 and 1999, Turner claims she applied for several promotions in 1998 and 1999 but was not interviewed or selected. Although Micro Switch claims it has no records of Turner applying for any positions during these two years, for purposes of summary judgment the court will accept Turner's version of events. Even so, she has failed to offer any evidence showing a causal connection between the promotion decisions and her filings. Turner does not identify the positions for which she applied, the hiring supervisor or whether the hiring supervisor even knew of Turner's protected activity. Turner has failed to proffer evidence in support of the third element of a prima facie case of retaliation based on any 1998 and 1999 promotion decisions, and her claim fails.

Turner claims Munz was cold and unfriendly to her and she was chastised for talking with a coworker in retaliation for filing a charge with the OFCCP and EEOC. [*24] (LR56.1(b) PP 58, 63) Turner states her coworkers' unfriendly behavior (*Id.* PP 60-61) was also in retaliation for filing the charges. [HN14]Under Title VII, not everything that makes an employee unhappy is an actionable adverse action. *Bell,* 2000 WL 1661834, slip op. at 15. "For an employment action to be actionable, it must be a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.* (quoting *Burlington Indus. v. Ellerth,* 524 U.S. 742, 761, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998)). Refusing to greet Turner or being "cold" and unfriendly to her are trivial matters that do not rise to the level of actionable retaliation. *see also Drake,* 134 F.3d at 885-86 (shunning by coworkers was not an adverse action). [5]

> 5    To the extent Turner's complaint includes class action allegations, *see* Def. Mot., p. 3, she has failed to request class certification and has waived the issue. In any event, in light of the dismissal of her individual claims, any class certification is moot. *Chambers,* 17 F.3d at 1006.

### [*25] *Conclusion*

For the reasons set forth above, Micro Switch's Rule 56 motion is granted, its motion to strike is denied, and its request for oral argument is denied. Turner's motion to strike is granted. This cause is hereby dismissed in its entirety.

**ENTER:**

2001 U.S. Dist. LEXIS 63, *; 80 Empl. Prac. Dec. (CCH) P40,514

**PHILIP G. REINHARD, JUDGE**                    **DATED:** *January 3, 2001*
     **UNITED STATES DISTRICT COURT**