IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) | Civil Action No: 07 C 6996 |
| Plaintiff, | ) ) | |
| v. | ) ) | Judge Der-Yeghiayan |
| FAMILY DOLLAR, INC. | ) ) | Magistrate Judge Schenkier |
| Defendant. | ) ) ) | |

**EEOC's Memorandum in Support of its Motion for a Protective Order in regard to the Deposition of EEOC Investigator**

## I.   Introduction

In this case Plaintiff, Equal Employment Opportunity Commission ("EEOC"), alleges that Defendant subjected Kizzie Cotton and other dark-skinned African-American employees to harassment based on the color of their skin in violation of Title VII of the Civil Rights Act of 1964. Defendant plans to depose EEOC Investigator Carol Milazzo on July 2, 2008. She was the investigator assigned to investigate Cotton's Charge of Discrimination, filed with EEOC, which is the basis of this suit.

EEOC asks this court to limit Defendant's deposition of EEOC Investigator Milazzo to 4 hours. It also asks this court to bar Defendant from asking Milazzo questions about:

a)  EEOC's policies and procedures in regard to investigating Charges of Discrimination and issuing Determinations on them;

1

b) Whether Milazzo and/or EEOC, in investigating Cotton's Charge, followed the policies of the EEOC and/or any procedures or practices in effect at the Chicago District Office of the EEOC.

The parties, through counsel, have attempted in good faith to resolve their difference in regard to the scope and length of the Milazzo deposition, but have been unable to do so. [1]

## II.   EEOC has produced to Defendant the facts it Learned while Investigating Cotton's Charge of Discrimination.

EEOC does not dispute that Defendant has the right to discover the facts learned by Milazzo in the course of her investigation of the Cotton Charge, including Milazzo's investigation of whether other employees were subject to color discrimination. But as part of its Initial Disclosures EEOC has already produced to Defendant the records of its investigation, consisting of 359 pages of non-privileged documents in its Administrative file on Cotton's Charge of Discrimination filed with EEOC.[2] They include approximately:

* Twenty three pages of documents written or signed by Kizzie Cotton.

* Eight pages of Milazzo's interview notes of Kizzie Cotton.

* Nineteen pages of Milazzo's interview notes of employees and managers at the store where Cotton worked, and a customer at that store.

---

[1] On April 18, 2008 Defendant advised EEOC that it sought to depose EEOC investigator Carol Milazzo. Counsel for the parties exchanged correspondence on April 21, and May 12, 15, and 19. They conferred by phone on June 6, 2008. Some of the issues in regard to the Milazzo deposition had also been raised in letters exchanged on April 2, 8 and 15 in regard to Defendant's March 14, 2008 Notice of Deposition under Rule 30(b)(6), which listed multiple topics of inquiry, to which the EEOC objected.

[2] Privileged documents were identified on a Privilege Log which EEOC produced to Defendant.

2

The records produced contain the facts discovered by the EEOC in the course of its Administrative Investigation of the Cotton Charge of Discrimination. See Exhibit A, Affidavit of Carol Milazzo.

EEOC recognizes that an investigator's notes may be ambiguous. As a result on May 15, 2008 EEOC proposed that Defense counsel identify to EEOC in writing any ambiguities and EEOC would ask Milazzo to clarify them in written declaration before her deposition. EEOC's offer still stands and should, if accepted, obviate the need for a deposition of even one or two hours.

Defendant contends that Milazzo may not have kept complete notes when Kizzie Cotton filed her Charge of Discrimination on March 31, 2006 and her Amended Charge of Discrimination on May 1, 2006.  EEOC disagrees (see Exhibit A), but will not object if Defendant asks Milazzo if she discovered any information or evidence that has not been already disclosed to Defendant.

### III.   Argument

**A.   The EEOC's Administrative Investigation and Determination are not proper Subjects for Litigation**

Defendant seeks to ask Milazzo what she did in investigating this case that is different from how she has investigated other cases.[3]  It also:

> . . . seeks information regarding whether the EEOC's standard polices and procedures for investigating individual charges of discrimination were followed with respect to Ms. Cotton's claim. If these policies were not followed, Family Dollar is entitled to discover what, if any, unique facts of her claim justified a departure from the typical policies and procedures.[4]

Rule 26(b) (1) of the Federal Rules of Civil Procedure allows a party to

---

[3] Email between counsels for the parties on Friday June 6, 2008.
[4] April 8, 2008 letter from Defense counsel to EEOC counsel.

3

"obtain discovery regarding any matter, not privileged, that is <u>relevant</u> to the claim or defense of any party . . ." [5] The Seventh Circuit and courts within the Seventh Circuit have made clear that information on how the EEOC investigated a Charge of Discrimination or arrived at its Determination thereon is both privileged and not relevant evidence because the EEOC's administrative investigation and determination are not proper subjects for litigation. In *EEOC v. Chicago Miniature Lamp Works*, 526 F. Supp. 974 (N.D. Ill. 1981), the Charge of Discrimination filed with the EEOC alleged individual discrimination, but the EEOC investigated and issued a Letter of Determination finding class discrimination. Defendant argued that the investigation did not find class discrimination, that the class determination was improper, and that the suit should be limited to a claim of individual discrimination. The court ruled that:

> [Defendant's] Motion asks this Court to look behind EEOC's express finding of broad-scale discrimination to decide whether EEOC had any reasonable basis for making that finding. Such an endeavor is both conceptually and procedurally unsound.
>
> That line of inquiry would deflect the efforts of both the court and the parties from the main purpose of the litigation: to determine whether [Defendant] has actually violated Title VII. Acceptance of [Defendant's] theory would entitle every Title VII defendant to litigate as a preliminary matter whether the EEOC had a reasonable basis for its determination. . . . [That theory] would effectively make every Title VII suit a two-step action: First the parties would litigate the question of whether EEOC had a reasonable basis for its initial findings, and only then would the parties proceed to litigate the merits of the action.

---

[5] The rule adds, "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

4

> Title VII's statutory scheme clearly indicates that no such procedure was intended by Congress. EEOC's determination of reasonable cause and the nature of its investigation are completely discretionary. EEOC is not required to create a record or hold any sort of hearing. It is permitted to gather any evidence it deems appropriate. Suppose indeed that this Court were to deny [Defendant's] motion for summary judgment on the ground that a factual issue existed as to whether EEOC had actually found widespread discrimination in its investigation. Must this Court then conduct a hearing to determine what had turned up in EEOC's inquiry?

Id. at 975. Reversed on other grounds, 947 F. 2d 29 (7th Cir. 991).

Moreover, *EEOC v. Caterpillar*, 409 F.3d 831, 833 (7th Cir. 2005), holds in regard to EEOC litigation that a court has "no business limiting the suit to claims that the court finds to be supported by the evidence obtained in the Commission's investigation. The existence of probable cause to sue is generally and in this instance not judicially reviewable." *See also, EEOC v. St. Michael's Hosp. Of Franciscan Sisters*, 1997 WL 665757 (E.D. Wis. 1997) (parties to discrimination suits may not litigate "the reasonableness of the EEOC's [reasonable cause] determination as this would end-run the purpose of the litigation: to ascertain whether the defendant actually violated Title VII"); *EEOC v. KECO Industries, Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984) (error for the district court to inquire into the sufficiency of the EEOC's investigation); *EEOC v. General Electric Co.*, 532 F.2d 359, 370 n.31 (4th Cir. 1976) (EEOC's investigation not reviewable, noting the substantial "potential for delay and diversion which such an undertaking would create" and the "limited benefit," the court holds, "The Commission's determination does not establish rights or obligations; the respondent is entitled to a trial de novo in the district court.").

The EEOC's Determination of reasonable cause is not an adjudication, but is only an administrative prerequisite to a court action. It has no legally binding

5

significance in subsequent litigation. *EEOC v. Walner*, 91 F.3d 963, 968 n.3 (7th Cir. 1996). Only a court may enter a judgment as to whether an employer violated Title VII. "Because the EEOC's determination of reasonable cause is a discretionary, administrative function, an employer-defendant is entitled to a trial *de novo*. Stated differently, [an employer] is free to challenge the EEOC's contention that [it] violated the law--by meeting the EEOC's proof--but not by attempting to undermine the EEOC's administrative determination." *St. Michael Hosp.* at *2 (citing *EEOC v Temple Steel Co.*, 723 F. Supp. 1250 (N.D. Ill. 1989)). *See also cases cited supra*. An employer has no cause of action to challenge an EEOC Determination.

The Seventh Circuit has repeatedly ruled that when a branch of the Federal Government files a suit in Federal Court, it is improper for courts to review the underlying pre-suit administrative investigation and decision. Instead, courts are limited to assessing the merits of the lawsuit itself. For instance, In *Re: United States of America,* 2005 WL 352429 (7th Cir. 2005, holds: that:

> [F]ederal judges may not insist that prosecutors reveal deliberative or pre-decisional materials. A federal court may evaluate lawyers' final submissions – that is, must review outputs rather than inputs. How the United States reaches its litigating positions, who said what to whom within the prosecutor's office, and so on, are for the Attorney General and the President to evaluate. The Judicial Branch is limited to assessing counsel's public deeds.

*United States v. Internat'l Ass'n of Bridge, Structural and Ornamental Iron Workers, Local No. 1*, 438 F.2d 679 (7th Cir. 1971), was a Title VII suit brought by the Attorney General based on EEOC's investigation of a Charge of Discrimination. Defendant sought discovery into the basis for the determination of reasonable cause. The Seventh Circuit rejected that claim, stating, "The statute

6

does not contemplate that the courts shall make a preliminary determination of the Attorney General's finding of reasonable cause.." (Internal quotations omitted.) See also *Silverman v. Commodity Futures Trading Com'n*, 549 F.2d 28 (7th Cir. 1997). In that case a trader whose license had been suspended by the Commodity Futures Trading Commission ("CFTC") challenged the CFTC investigation procedures. Plaintiff sought (1) the production of "a statement of the procedure employed by . . . [the investigators] in interrogating" witnesses; (2) to depose the investigators, and (3) to show that the investigators deviated from the administrative guidelines. *Id.* at 34. The court ruled that the denial of these requests did not constitute deprivation of due process, explaining that it was "not necessary for an investigator to scrupulously adhere to each detail of a "guideline." Every investigation must necessarily differ from all others and guidelines are only that. Guidelines are intended to generally facilitate the business of the agency and not as conferring important procedural benefits upon the subjects of investigation. *Id.* at 34.

Because the Seventh Circuit and other circuits have made clear that courts may not investigate or review how the EEOC investigated or made a Determination on a Charge of Discrimination, questions posed to Milazzo at her deposition in this regard would seek evidence that is irrelevant. The EEOC should not have to take an Investigator away from her job to respond to questions seeking irrelevant information. (Limiting the time of Investigator Milazzo's deposition is important because she has a case load of 250 pending Charges of Discrimination that she is investigating, See Exhibit A. Such a case load makes it difficult for EEOC to promptly investigate and make determinations on Charges of Discrimination.)

Because Defendant already has the non-privileged documents in the EEOC's Administrative File, and thus has knowledge of all the facts acquired by

7

Milazzo in her investigation, a deposition limited to relevant inquiries should take fewer than four hours.[6]

> **B.    The Governmental Deliberative Process Privilege prohibits Employers from Challenging EEOC's policies and procedures in regard to investigating and issuing Determinations on Charges of Discrimination, once they have been given access to the facts discovered by the EEOC in its investigation.**

The governmental deliberative process privilege protects communications that contain the mental impressions and thought processes of EEOC employees. *EEOC v. Sears, Roebuck & Co.*, 111 F.R.D. 385, 390 (N.D. Ill. 1986); EEOC *v. G.K.G.,* 131 F.R.D. 553, 556 (N.D. IL 1990). It protects communications that are part of the decision-making process of a governmental agency. *United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir.1993). Because frank discussion of legal and policy matters is essential to the decision-making process of government agencies, communications made prior to and as part of an agency determination are protected from disclosure. *Id.*

In *Walker v. NCNB National Bank*, 810 F. Supp 11, 14 (D.D.C. 1993), EEOC had initially found "no cause" on Plaintiff's Charge of Discrimination, but later reconsidered and issued a "cause" determination. In the subsequent federal lawsuit, NCNB deposed an EEOC official, but he refused to answer questions regarding the EEOC "cause" Determination, including questions about the procedure that EEOC followed in reaching that Determination. The court denied Defendant's motion to compel answers to these questions, ruling that "the information sought clearly falls" within the "deliberative process" privilege

---

[6] Defendant may argue that EEOC counsel should object to each question on these topics during the course of the deposition. But the Seventh Circuit case law is so clear that it follows that is both appropriate and necessary for this Court to enter a protective order before Milazzo's deposition prohibiting Defendant from asking her questions on how EEOC investigated or made a Determination on Kizzie Cotton's Charge of Discrimination.

because it relates directly to the manner by which the EEOC arrived at its "reasonable cause" Determination.

In *U.S. E.E.O.C. v. Continental Airlines, Inc.* 395 F. Supp.2d 738, 742 (N.D. IL 2005), EEOC had turned over to defendant all the documents in its administrative file on the Charge of Discrimination on which its Title VII suit was based, except for the "Investigative Memorandum" prepared by the EEOC investigator assigned to the case. The Court denied Defendant's Motion to Compel EEOC to produce the Investigative Memorandum, noting that EEOC had already produced the facts contained in the report to Continental when it turned over the interview notes. The court then concluded:

> Because EEOC has produced all of the source material to Continental, the information Continental purportedly seeks is already available to Continental, and Continental cannot make the requisite showing of particularized need. Id. at 742.

The court further explained, "Subjecting [the investigator's] deliberations and assessments [of the evidence] to disclosure would hinder future agency communications. . ." Id. Similarly, here because EEOC has produced all of Milazzo's interview notes (See Exhibit A), this court should bar Defendant from any inquiries about EEOC's policies and procedures, and any questions whether the EEOC, in investigating Cotton's Charge of Discrimination, followed the policies of the EEOC or any procedures or practices in effect at the Chicago District Office of the EEOC. It would serve no interest to allow the deposition to continue for 8 hours, while EEOC's counsel objected and instructed the witness not to answer questions on topics that are clearly improper.

Defendant relies in part on the decision of the District Court in Colorado in *EEOC v. Albertson's LLC*, 2007 WL 1299194. To the extent that the case authorized Defendant to depose the EEOC investigator, EEOC asserts it was

9

wrongly decided, and is inconsistent with the Seventh Circuit case law discussed in Section II B above.[7]

       Respectfully submitted,


       _/s/ Gordon Waldron
       Gordon Waldron
       Senior Trial Attorney
       Equal Employment Opportunity Commission
       500 West Madison Street, Suite 2800
       Chicago, Illinois 60661
       (312) 353-7525

**Attachments**

Exhibit A    Affidavit of Carol Milazzo

---

[7] Defendant has cited to EEOC three other cases.

    In EEOC *v. Airborne Express*, 1999 WL 124380 (E.D. Pa.), Defendant in an employment discrimination case was allowed depose the EEOC investigator assigned to the case. But the opinion implies that Defendant sought to learn only "factual information" from the investigator. For instance the court allowed EEOC to assert applicable privileges in response to "document requests." At * 2. It thus appears that EEOC had not yet produced copies of the Charging Party's statements. Here EEOC has produced such statements.

    *EEOC v. Corrections Corporation of America*, 2007 WL 4403528 (D. Colo.), holds that the topics contained in Defendant's 30(b)(6) deposition notice to the EEOC seek information reasonably calculated to lead to the discovery of admissible evidence, but the opinion does not disclose what those topics are. Thus the opinion can have no precedential value.

    *EEOC v. Citizens Bank*, 117 F.R.D. 366 (D. Maryland, 1987), states "when the government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of material that a private plaintiff would have to turn over." But that discussion was in regard to documents (not depositions), the content of which are not disclosed in the opinion. As a result it can have no value as a precedent. In this case the EEOC has disclosed all of the non-privileged documents in its Administrative file on Cotton's Charge of Discrimination.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2008, I electronically filed the attached **Memorandum in support of EEOC Motion for Protective Order in regard to Deposition of EEOC Investigator,** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Paul E. Bateman, John Ybarra, Shanthi Gaur, Asilia S. Backus
Littler, Mendelsohn
200 North LaSalle Street, Suite 2900
Chicago, IL 60601
(312) 795 3224

                                              s/ Gordon G. Waldron
                                              Gordon G. Waldron, Bar No. 02920646
                                              Senior Trial Attorney
                                              Equal Employment Opportunity Commission
                                              500 West Madison Street, Suite 2800
                                              Chicago, Illinois 60661
                                              phone: (312) 353-7525
                                              fax: (312) 353-8555
                                              gordon.waldron@eeoc.gov