# EXHIBIT 6

Case 1:07-cv-06996   Document 38-7   Filed 07/21/2008   Page 2 of 6

EEOC vs. FAMILY DOLLAR
DEPOSITION OF CAROL ANN MILAZZO                              July 2, 2008

Page 102

1  from my memory that once Cotton complained about
2  Bates, things changed. Dixon said she was treated
3  better.
4      Q   Okay.
5      A   Meaning better than Cotton.
6      Q   Okay. But --
7      A   And the changing event was after Cotton
8  complained about Bates.
9      Q   Okay. But is there some reason then why
10 you wouldn't have put in your statement then CP
11 complained about Bates since this would be --
12 wouldn't have be an important fact to put in your
13 statement to make it accurate and full?
14     A   Again, I don't take stenography.
15     Q   The question is --
16     A   I'm giving you the best recollection.
17     Q   Is there some reason why you didn't put it
18 in there other than the fact that you don't take
19 stenography, which I'm quite aware of?
20     A   No.
21     Q   Okay. And there's nothing in here that
22 indicates what even Cotton complained about, is
23 there?
24     A   Again, the rest of the file has that

Page 103

1  information, I'm sure.
2      Q   Just -- well, here's what I want to know.
3  I want to know what Ms. Dixon told you, and this
4  statement that you wrote does not say that charging
5  party complained about Ms. Cotton, number one. You
6  would agree that statement does not say that. Would
7  you agree with that, ma'am?
8      A   That's correct.
9      Q   Okay. And it doesn't indicate what -- if,
10 in fact, you want to infer that she was complaining
11 about Ms. Bates, it doesn't even indicate what she
12 was complaining about. Is that correct?
13     A   That's correct.
14     Q   Okay. So is it possible, just possible,
15 that Ms. Dixon never told you that charging party
16 complained about Ms. Bates --
17     A   No.
18     Q   -- during this interview?
19     A   No.
20     Q   But you chose not to write that down.
21         And is it also possible that Ms. Dixon
22 didn't tell you what Ms. Cotton was complaining about
23 Ms. Bates, what the subject of the complaint was,
24 because you didn't write that down either?

Page 104

1      A   All I recall is Dixon said Cotton
2  complained about her treatment by Bates.
3      Q   And that's all you recall?
4      A   That's all I recall.
5      Q   Okay. And then earlier, in terms of your
6  recitation of Exhibit No. 10, the last line, would
7  you read that?
8      A   "Tiffany would play with everybody. No
9  difference in treatment."
10     Q   Okay. So she didn't tell you no
11 significant difference in treatment; you wrote down
12 "no differences in treatment." Is that correct?
13     A   That's what I wrote.
14     Q   And she didn't tell you that there was no
15 significant differences in treatment, did she?
16     A   No.
17     Q   And up at the top, you wrote down "Tiffany
18 would" -- "Charging party and Tiffany would call each
19 other names." Do you see that?
20     A   Mm-hmm.
21     Q   Do you recall what names they called each
22 other?
23     A   No, but not color-related and not racial.
24     Q   Okay. And how do you know that? Did she

Page 105

1  tell you what names were being called by -- what
2  charging party was calling Tiffany?
3      A   My notes say she could not recall the
4  specifics.
5      Q   So you don't know whether they were
6  color-related or not, do you?
7      A   I would have put in my notes if they were.
8      Q   Well, if she can't recall the specifics,
9  ma'am, how would you be able to put it in your notes?
10     A   Because I'm credible.
11     Q   You're credible?
12     A   And I did this investigation.
13     Q   Okay. Do you remember an individual by the
14 name of Camille Keller?
15     A   Yes.
16     Q   How many times did you talk to her during
17 the course of this investigation?
18     A   Oh, maybe two, three times. I don't recall
19 exactly.
20     Q   Is there a reason why you talked to her
21 more than one time?
22     A   Again, I would need to refer to my notes.
23     Q   Okay. And in terms of your conversations
24 with Ms. Keller, is it fair to say those were all

EEOC vs. FAMILY DOLLAR
DEPOSITION OF CAROL ANN MILAZZO                              July 2, 2008

Page 110

1    Q  So, in fact, you had this conversation
2  that's recorded here on Deposition Exhibit No. 11 on
3  a date other than June 20th, 2006.
4    A  Possibly.
5    Q  Okay. So when you tell me -- and you've
6  told me earlier that these dates indicate the date on
7  which you actually recorded the conversation. That's
8  not completely accurate in every instance, is it?
9    A  No.
10   Q  Okay. Now, can you tell me what questions
11 you asked of Ms. Keller on whatever date you talked
12 to her that's reflected in Exhibit No. 11?
13   A  Well, I asked her her color or skin tone
14 because I have that identified here.
15   Q  Okay.
16   A  I asked her if she was still employed. She
17 indicated she had been terminated and that Tiffany
18 was the one that fired her.
19   Q  Okay.
20   A  In her personal experience, she also being
21 a dark-skinned black as is charging party, Tiffany
22 would talk down to her and try to embarrass her. She
23 identified Tiffany as lighter-skinned black.
24   Q  Okay. All right.

Page 111

1    A  So basis of identification --
2    Q  You asked her basis of identification. So
3  you asked her questions about her, meaning
4  Ms. Keller's skin tone or color?
5    A  Right, and that of Tiffany Bates.
6    Q  You asked about Tiffany Bates.
7    A  Mm-hmm.
8    Q  Uh-huh.
9    A  She -- she identified another employee,
10 Marvin, who was treated more favorably who was
11 lighter-skinned. So we're starting to identify
12 treatment of employees by Bates dependent on
13 color/tone.
14   Q  Can you help me out here? Can you tell me
15 where you're reading this from? Because I don't see
16 this on this document. You know, for example --
17   A  "Tiffany always treated Marvin favorably."
18   Q  Uh-huh.
19   A  He's a lighter-skinned black. More
20 favorable treatment by the supervisor to another
21 lighter-skinned black.
22   Q  Okay. Here's a question I want to ask you.
23 Did she say, "Tiffany always treated Marvin more
24 favorably because he is a lighter-skinned black"?

Page 112

1  And if that is, in fact, what she said, I want to
2  know why you have that in parens on the outside.
3    A  To emphasize it to myself.
4    Q  Okay. Isn't it true, Ms. Milazzo, that she
5  said that Tiffany always treated Marvin more
6  favorably, you made a notation that Marvin was a
7  lighter-skinned black, and then you jumped to the
8  conclusion that was the reason for the treatment?
9    A  No.
10   Q  Well, she didn't tell you Tiffany always
11 treated Marvin more favorably because he was a
12 lighter-skinned black because you sure didn't write
13 that down, did you?
14   A  That's your opinion.
15   Q  Do you see the word "because" he's a
16 lighter-skinned black in here? Do you? Tell me if
17 you do.
18   A  We all have different perceptions.
19      MR. WALDRON: Carol --
20 BY MR. BATEMAN:
21   Q  That's not my question.
22      MR. WALDRON: Carol, just answer the
23 question he's asking.
24      THE WITNESS: Is the word "because" there?

Page 113

1  No.
2  BY MR. BATEMAN:
3    Q  Okay.
4    A  Is that your question?
5    Q  Yes. And, in fact, didn't you write, "She
6  didn't think the problem was because of color"?
7  That's what you wrote down. Do you see that part?
8    A  That's right. That's my notes.
9    Q  So --
10   A  So if that's what she said, that's what I
11 put in my notes.
12   Q  Okay. So she never said that Tiffany
13 treated Marvin more favorably because he was a
14 lighter-skinned black. Is that correct?
15   A  No. People can change their testimony when
16 you go back and you reask a question, which I'm sure
17 you're familiar with.
18   Q  People can change their testimony?
19   A  Yes.
20   Q  Well, no. I'm just asking about what's
21 here. I'm not asking about what was changed later.
22   A  I wrote down what she said in the sequence
23 in which she said it.
24   Q  So she said, "Tiffany always treated Marvin

                                        29 (Pages 110 to 113)

LISA A. KOTRBA & ASSOCIATES, LTD. (312) 855-1834

164435f5-a73f-4ae6-a2c8-52cc6dd248b2

Case 1:07-cv-06996   Document 38-7   Filed 07/21/2008   Page 4 of 6

EEOC vs. FAMILY DOLLAR
DEPOSITION OF CAROL ANN MILAZZO                              July 2, 2008

Page 130

1  ever been called "charcoal," one of the words that
2  Cotton alleged she had been called, meaning Cotton by
3  Bates. Anything else that made her feel inferior
4  since Cotton's information indicated she was
5  demeaned, humiliated because of certain words that
6  were used.
7     Q   Okay.
8     A   Camille's answer was no.
9     Q   Okay. Well, let me see if I can -- I don't
10 mean to cut you off, but I do want you to make your
11 train, so maybe we can just stick to the question
12 that's being asked.
13        Looking here at Exhibit No. 13, did you
14 specifically ask Ms. Keller the following question:
15 "Did Tiffany ever make derogatory remarks to witness
16 because she is darker-skinned, such as calling her
17 charcoal or something which made her feel inferior
18 simply because she was a darker-skinned black?" Did
19 you ask that specific question?
20    A   Yes.
21    Q   Okay. That's word for word.
22    A   Yes.
23    Q   Okay. So all right. So now we have one
24 word-for-word question that you asked her. And the

Page 131

1  witness told you she was never -- that Ms. Bates
2  never called the witness "charcoal." Is that
3  correct?
4     A   Correct.
5     Q   All right. Then you have here that
6  "Tiffany called her" -- and you're referring to --
7     A   The witness, yes.
8     Q   -- Ms. Keller -- "blackie before she" --
9  and what's that? What's that word? "Before she"
10 what?
11    A   "Considered."
12    Q   "Before she considered the remark as
13 kidding but not offensive."
14        So any remarks that Ms. -- that Ms. Bates
15 made to Ms. Keller regarding Ms. Keller's skin color,
16 she is telling you she did not find them to be
17 offensive, correct?
18    A   She said the only word Bates called her was
19 "blackie," and she didn't find that specific word
20 offensive to her.
21    Q   Okay. And then she says -- is it also
22 correct she said "She cannot recall any comment made
23 to her by Tiffany as demeaning simply because her
24 skin tone was darker than Tiffany's"? Is that

Page 132

1  correct?
2     A   Yes.
3     Q   And am I correct in stating from this
4  document marked as Exhibit No. 13 then that there was
5  no questions here asked about Ms. Bates and
6  Ms. Cotton? This all has to do with Ms. Keller and
7  Ms. Bates?
8     A   Correct.
9     Q   So in this particular instance then, you
10 were looking to see -- tell me if I'm wrong --
11 whether or not Ms. Bates had done any action towards
12 Ms. Keller that was considered to be --
13    A   That she perceived, yeah, correct.
14    Q   Okay. And she told you no.
15    A   Correct.
16    Q   All right.
17        (Milazzo Exhibit 14 marked.)
18 BY MR. BATEMAN:
19    Q   You have in front of you Exhibit No. 14 to
20 your deposition, which is Bates-labeled E '125. And,
21 again, this is your handwriting? This is your
22 document, correct?
23    A   Yes.
24    Q   Okay. And it has a date of 9/4/07,

Page 133

1  correct?
2     A   Correct.
3     Q   In the upper right-hand corner, correct?
4     A   Correct.
5     Q   And then this is yet again, it appears to
6  be, a summary of a conversation that you had with
7  Camille Keller, correct?
8     A   Correct.
9     Q   Do you recall what date you actually spoke
10 to Camille Keller?
11    A   I can only assume 9/4.
12    Q   Okay. Well, let's start off at the top
13 here. "Camille Keller," it says, "re interview." Is
14 that correct?
15    A   Mm-hmm.
16    Q   Well, why are you contacting Ms. Keller
17 again? This is number three, is it not?
18    A   It is.
19    Q   Yes. And what's the purpose behind this
20 contact?
21    A   I'm assuming we've identified other
22 dark-skinned blacks, and I'm trying to determine if
23 anybody else was treated similar to Ms. Cotton.
24    Q   Okay.

Case 1:07-cv-06996   Document 38-7   Filed 07/21/2008   Page 5 of 6

EEOC vs. FAMILY DOLLAR
DEPOSITION OF CAROL ANN MILAZZO                                    July 2, 2008

Page 146

1  fact, that was a quote.
2      Q   Okay. So she didn't use those exact words?
3      A   I would assume not.
4      Q   Okay.
5      A   My notes are summaries of what is told to
6  me.
7      Q   They're summaries. So can you tell me
8  specifically what she said? If she told you she does
9  not know why she was terminated, can you tell me
10 specifically what she told you that has anything to
11 do with her termination and her skin color? I want
12 to hear the specific words.
13     A   She did not say in any words it was because
14 of her color that she was terminated because she said
15 she didn't know why she was terminated.
16     Q   So then she did not tell you at any time
17 that she was terminated because of her skin color.
18     A   That's correct.
19         (Milazzo Exhibit 16 marked.)
20 BY MR. BATEMAN:
21     Q   You have in front of you Exhibit No. 16 to
22 your deposition. Again, these are your handwritten
23 notes. Is that correct?
24     A   Yes.

Page 147

1      Q   And Bates number '135, '136 from EEOC. And
2  you start off at the top "7/12/06," correct?
3      A   That's correct.
4      Q   All right. Did you have a phone
5  conversation with Ms. Patterson on July 12 --
6      A   Yes.
7      Q   -- 2006?
8          You have to let me finish. Okay?
9      A   Okay. Sorry.
10     Q   So yes, you did have a conversation with
11 her on July 12th, 2006.
12     A   Yes.
13     Q   And this was over the phone.
14     A   Yes.
15     Q   And Ms. Patterson, this was someone who had
16 been identified to you by Ms. Cotton. Am I right
17 about that?
18     A   Yes.
19     Q   Can you tell me what questions you asked
20 Ms. Patterson?
21     A   Again, this was a regular customer. I
22 asked her if she knew Tiffany and Ms. Cotton. She
23 identified by color/tone both Ms. Cotton and Tiffany.
24     Q   What do you know about Ms. Patterson? Do

Page 148

1  you know anything about her physical attributes?
2      A   No.
3      Q   Do you know, for example, what race she is?
4      A   I believe she's a black American, African
5  American.
6      Q   And why do you believe she's an African
7  American? What -- did she tell you that?
8      A   If memory serves me correctly.
9      Q   Did you reflect that in the notes?
10     A   No.
11     Q   Anything else that you can recall that
12 would have led you to conclude that she is, in fact,
13 an African American?
14     A   No.
15     Q   Do you know anything about her age?
16     A   No.
17     Q   Do you know anything about her eyesight?
18     A   No.
19     Q   Do you know anything about her hearing?
20     A   No.
21     Q   Do you know how many times that she goes to
22 the Family Dollar store?
23     A   Other than her remark that she frequently
24 shops there.

Page 149

1      Q   Did she ever give you any evidence showing
2  that she had, in fact, shopped at that Family Dollar
3  store, like a store receipt?
4      A   No.
5      Q   So other than her word, you don't know if
6  she'd ever been in that Family Dollar store. Is that
7  correct?
8      A   Yes.
9      Q   All right. Did you ask her any questions
10 regarding her relationship to Ms. Cotton?
11     A   Yes.
12     Q   Okay.
13     A   "Does not know Cotton other than she waits
14 on her at the store."
15     Q   Did you ask her whether or not they, for
16 example, might go to church together?
17     A   No. Simple question.
18     Q   Did you ask her whether they might belong
19 to the same sorority?
20     A   "Does not know Cotton other than she waits
21 on her at the store."
22     Q   I know what the response; I'm asking you
23 what you asked her. So did you ask her just
24 generally, "How do you know her?"

Case 1:07-cv-06996    Document 38-7    Filed 07/21/2008    Page 6 of 6

EEOC vs. FAMILY DOLLAR
DEPOSITION OF CAROL ANN MILAZZO                              July 2, 2008

Page 158

1   A   Correct.
2   Q   Okay. Ms. Milazzo, what I want you to do
3 is look at 17 and 18. I want you to read both of
4 those, and I'm just going to ask you some very brief
5 questions about those, those statements.
6   A   Okay.
7   Q   Would you agree with me that in Exhibit
8 No. 17, which is your conversation with Marvin Ware,
9 that there is absolutely no reference to his skin
10 color?
11  A   Correct.
12  Q   And would you agree with me that in Exhibit
13 No. 18, which is your conversation with Tiffany
14 Bates, that there is absolutely no reference to her
15 skin color?
16  A   Correct.
17  Q   Whether it be in the absolute or in
18 comparison to Kizzie Cotton. Is that correct?
19  A   Correct.
20  Q   Okay. Now, earlier this morning, I had had
21 you look at an exhibit. And this was the exhibit
22 which was your notes of a statement that you made to
23 me on June 20th, 2006.
24  A   What document are we talking about?

Page 159

1       MR. WALDRON: Do you know the document
2 number you're on?
3       MR. BATEMAN: It would be Exhibit No. 5.
4       THE WITNESS: 5B?
5       MR. WALDRON: 5 --
6  BY MR. BATEMAN:
7   Q   Of you, your 5, Milazzo 5.
8       MR. WALDRON: And why don't you take a look
9 at this copy of it here.
10      THE WITNESS: Okay.
11 BY MR. BATEMAN:
12  Q   And remember I asked you those questions,
13 or a question, about a statement that you had
14 corroboration about the conduct of Bates. Do you
15 remember me asking you questions about that?
16  A   Mm-hmm.
17  Q   Yes?
18  A   Yes.
19  Q   Okay. And you had told me at that time
20 something to the effect -- I'm not going to have the
21 court reporter read it back verbatim, but I think I'm
22 going to capture the essence of it -- that you said
23 something to the effect of you couldn't tell me what
24 that corroboration was until you looked and had a

Page 160

1 chance to look at the witness statements and
2 et cetera.
3       Now that you've had a chance and we've
4 spent some time going through these various
5 statements that you've taken from individuals over
6 the telephone, can you tell me what it is that you
7 had as of June 20th, 2006, that corroborated
8 Ms. Cotton's claim that she had been discriminated
9 against because of her color, dark-skinned? Tell me
10 what of those statements corroborates that just so
11 that I'm clear where you were at that particular
12 time.
13  A   Well, what I see at the moment would have
14 to be the reference to the fact that Cotton had made
15 reports and they did not look like they were ever
16 investigated.
17  Q   Okay. And that would go to the issue of
18 whether or not some kind of complaint had been made
19 and whether the company had responded and taken
20 appropriate action.
21      But what I'm asking about, corroborating
22 that she had been harassed because of her color.
23 Would you agree with me that there is no statement
24 there that corroborates that pre-June 20, 2006?

Page 161

1   A   Again, looking at the documents today, I
2 would have to say that's true.
3   Q   Okay.
4       MR. BATEMAN: If we can just take a
5 two-minute break here.
6       MR. WALDRON: Okay.
7           (Recess taken from 2:24 p.m.
8            to 2:30 p.m.)
9       MR. BATEMAN: Back on the record.
10 I have no further questions of Ms. Milazzo.
11      MR. WALDRON: All right. Can you give me a
12 couple of minutes just to see if I have anything
13 else?
14      MR. BATEMAN: Sure.
15      MR. WALDRON: Actually, let me step out.
16      THE WITNESS: Well, can I add to the
17 response to the last question?
18      MR. BATEMAN: Well, let's see what your
19 counsel -- he might have something he wants to ask
20 you.
21      THE WITNESS: Okay.
22          (Recess taken from 2:30 p.m.
23           to 2:38 p.m.)
24 ///